## INGERSON *vs.* MILLER.

47    47
130a 248

The action for seduction has its foundation in the relation of master and servant; and loss of service, or actual injury to the plaintiff's rights as master must be averred and proved.

It is now well settled that the action is not maintainable upon the mere relation of parent and child. Proof of seduction merely is not sufficient; but the plaintiff must show that a direct injury to his rights as master resulted therefrom.

But proof of the slightest loss of service, or the most trifling injury, if the direct result of the wrongful act, is sufficient to uphold the action.

Mere seduction, however, without pregnancy, consequent ill health, or injury to the servant, will not give the right of action.

But when pregnancy and consequent incapacity for physical exertion and endurance follow from the wrongful act, the technical requirement of the law in regard to actual loss, or injury to the master's rights, is met and answered.

In such a case, sickness and temporary if not permanent derangement of the system, being the necessary result, it becomes as matter of law an injury of which the master, as such, may complain.

It is no objection to the maintenance of the action that no expense, or actual loss of services to the plaintiff is proved. It is sufficient that the father was, at the time, *entitled* to the services of the daughter, and *might* have required them, had he chosen to do so.

If there has been a wrongful interference with his right to his daughter's services, and he could not have obtained them had he required them, at least not to the same extent as if pregnancy had not existed, there is a positive injury to the plaintiff's rights, equally available, as a ground of action, with actual loss of service.

The master has a property in the labor of his servant, and any wrongful act creating or producing a disability in the servant to perform what the master has a right to require, operates as a disturbance or infringement of such right, to which the law will attach at least nominal damages as a result of the injury.

The minor daughter of the plaintiff, having been seduced by the defendant, became pregnant and died suddenly, about four months after conception. A *post mortem* examination disclosed a dead *fœtus*—also a congested brain, caused by nervous excitability or extreme mental agitation, or both. At the time of the seduction, and until her decease, the daughter resided with her father, except when employed as a school teacher, under a contract made with him. She was thus engaged at the time of her decease. *Held* that an injury to the plaintiff's rights was proved, clearly giving him a right of action. And that the court was right in refusing to dismiss the complaint on the objec-

Ingerson *v.* Miller.

tion that there was no proof of any loss of services, as a consequence of the seduction.

*Held,* also, that this was not a question, under the conceded facts, to be submitted to the jury.

*Held,* further, that the question of damages was for the jury, and they having found a verdict for the plaintiff for $5000, the amount was not so extravagantly excessive as to imply partiality, corruption or undue influence, or authorize the court to interfere with the verdict.

APPEAL from a judgment entered on the verdict of a jury. The action was brought for loss of services, consequent upon the alleged seduction, by the defendant, of Mary Ingerson, the plaintiff's minor daughter. The cause was tried at the May Saratoga circuit, 1865, before Justice JAMES, and a jury. On the trial it appeared, that in May, 1864, the plaintiff's daughter was pregnant, and at her own solicitation, was carried, in company with a female friend, by the defendant, to Saratoga Springs. The parties stopped at a public house, from whence the two females, alone, went to the office of a physician. The plaintiff's daughter disclosed her condition to the physician, and applied to him for relief. He positively refused to administer any; whereupon the girl appeared to be fainting, and instantly died. At this time she was engaged in teaching a district school, under a contract made with the father, and while so employed she boarded with her patrons. The *post mortem* examination revealed the facts that she was pregnant with a dead *fœtus,* from three to four months old, and that she died from congestion of the brain, induced by mental agitation.

At the close of the plaintiff's case, the defendant's counsel moved for a dismissal of the complaint, upon the grounds:

1st. That the plaintiff had shown no right of action against the defendant.

2d. That there was no proof of the seduction of the plaintiff's daughter by the defendant.

3d. That the plaintiff had shown no loss of the services of his daughter, to any extent, in consequence of any seduction of her by the defendant.

Ingerson *v.* Miller.

The court overruled the motion, and the defendant's counsel excepted.

The defendant's counsel then requested the court to submit to the jury the question as to whether or not there was any sufficient proof of loss of service to entitle the plaintiff to recover. This the court refused to do, and the defendant's counsel excepted.

The jury found a verdict in favor of the plaintiff for $5000. Whereupon the counsel for the defendant moved the court for a new trial, upon his minutes, which was denied, and an order to that effect entered. And the court, on motion of the defendant, granted an order staying judgment for thirty days, with leave to the defendant, within that time, to make and serve a case for appeal.

*W. A. Beach,* for the appellant.

*Wm. Hay* and *L. B. Pike,* for the respondent.

*By the Court,* BOCKES, J. The action is brought by a father for the seduction of his minor daughter.

The daughter was seduced by the defendant, became pregnant, and died suddenly, about four months after conception. A *post mortem* examination disclosed a dead and putrefying fœtus ; also a congested brain, caused as was supposed, by nervous excitability or extreme mental agitation ; or perhaps by both combined. At the time of the seduction, and until her decease, the daughter resided with her father, except when employed as a school teacher, under contract made with him for such service. She was thus engaged at the time of her decease. It is conceded that there existed in this case the relation of master and servant, and that the action was well established by the father as regards that point ; but it is insisted that there was no proof of any loss of service, produced by the seduction. This raises the principal question on the appeal.

Ingerson *v.* Miller.

The action of seduction has its foundation in the relation of master and servant, and loss of service or actual injury to the plaintiff's rights as master must be averred and proved. Whatever may have been the former ruling in some cases, it is now well settled that this action is not maintainable upon the mere relation of parent and child—that proof of seduction merely is not sufficient; but the plaintiff must show that a direct injury to his rights as master resulted therefrom. Such is the distinct and unmistakable ruling in *White* v. *Nellis*, (31 *N. Y. Rep.* 405,) and in *Knight* v. *Wilcox*, (14 *id.* 413.) But proof of the slightest loss of service, or the most trifling injury, if the direct result of the wrongful act, is sufficient to uphold the action. (*Badgley* v. *Decker*, 44 *Barb.* 577.) These principles are made especially applicable to cases where pregnancy does not ensue as a consequence of the seduction. Mere seduction, without pregnancy, consequent ill health, or injury to the servant, will not give the right of action. But most if not all the cases assume, as I think, that where pregnancy and consequent incapacity for physical exertion and endurance follows from the wrongful act, the technical requirement of the law in regard to actual loss or injury to the master's rights is met and answered. In such case, sickness and temporary if not permanent derangement of the system is the necessary result, and therefore it becomes as matter of law an injury of which the master, as such, may complain. In *Mulvehall* v. *Millward*, (11 *N. Y. Rep.* 343,) the daughter was seduced and became pregnant while a minor residing away from her father. She remained absent until after the birth of the child, and until after her recovery from accouchment. There was no evidence that her father took any care of her, or expended any money on her account during her pregnancy or sickness. The objection was there taken, as it is here, that no expense or actual loss of services to the plaintiff (the father) had been proved. A recovery was allowed, and the judgment was sustained, in the Court of Appeals. It was held sufficient that the father

Ingerson *v.* Miller.

was at the time entitled to the services of the daughter and might have required them if he had chosen so to do. To the same effect are the remarks of Judge Bronson, in *Bartley* v. *Richtmyer,* (4 *N. Y. Rep.* 44.) See also cases cited by Judge Bronson. That the father did not require them, and consequently suffered no actual loss, did not change the fact that there was a wrongful interference with his right to his daughter's services. Had he required the services, he could not have obtained them—at least to the same extent as if pregnancy had not existed. Therefore there was a positive injury to the plaintiff's rights, equally available as a ground of action, with actual loss of service. The master has a property in the labor of the servant, and any wrongful act creating or producing a disability in the servant to perform what the master has a right to require, operates as a disturbance or infringment of such right, to which the law will attach at least nominal damages as a result of the injury. It is on this principle that the action may be maintained by the parent in affluent circumstances, for the seduction of a daughter, from whom no menial service was ever required. True, mere seduction, unattended with pregnancy or other continued physical disturbance of the system, will not support the action; for the parent may, notwithstanding, obtain all which the relation of master secures to him. So this great and humiliating outrage to his sensibilities gives no right of action unless, as a necessary consequence, the daughter is disqualified, at least in some trifling degree, from performing what the parent may rightfully require. But if pregnancy ensue, she is thus disqualified. Her physical condition is affected—is disturbed—as a physiological necessity, impairing her ability to render, to the fullest extent, all that her relation as servant might impose. In this view the rights of the parent are interfered with by a wrongful act against which protection and indemnity may be claimed through the enforcement of just and salutary principles of law.

Let us now consider the case in hand. Was the plain-

tiff's daughter, at any time after conception, as well able to meet all the just demands incident to her legal relation to her father as before the illicit connection occurred? All must know that from a time immediately following conception she required tender consideration, and careful attention, to avert the catastrophe which caused her death. Was the destruction of the fœtus brought about by undue exertion in the performance or attempted performance of the duties imposed upon her by her regular and ordinary avocation? No one can now certainly say. It is in proof that she was *enciente*; hence her system was of necessity more or less excited and deranged. She was in this condition for about four months, and subject during that time to physical agitations, often as prostrating as if laboring under the effects of actual malady. For several days prior to her death her condition must have been distressing and dangerous in the extreme. As a matter of necessity she must have been in no condition for ordinary physical exertion for weeks prior to her death; and such condition was the direct consequence of the seduction. In my judgment, an injury to the plaintiff's rights was proved in this case, clearly giving him a right of action against the defendant. Under this view of the case, the facts standing uncontroverted, the court was right in refusing to dismiss the complaint on the objection that there was no proof of any loss of services as a consequence of the seduction; nor was this a question, under the conceded facts, to be submitted to the jury.

The remaining question relates to the amount of the verdict. I would have been better satisfied with a smaller amount, in view of the defendant's circumstances and position in life. The plaintiff was undoubtedly entitled to exemplary or punative damages. But a less verdict would have been a sufficient vindication of the law, as I think, and would have been more consistent with the probable pecuniary condition of the defendant. The question of damages was, however, for the jury, and the amount awarded is not, per-

haps, so extravagantly excessive as to imply partiality, corruption or undue influence in that body. The court should not, therefore, interfere with the verdict. (5 *Cowen*, 106, 118, 119, *and cases there cited.*) The judgment must be affirmed.

[ST. LAWRENCE GENERAL TERM, October 2, 1866. *Bockes, James, Rosekrans* and *Potter*, Justices.]