PETER LAWYER, Respondent, *v.* PETER G. FRITCHER, Appellant.

One who interferes with another's right to the service of a third person, whether male or female, a minor or adult, is liable for actual or compensatory damages, in the same manner and upon the same grounds that he would be liable for an unlawful interference with any other property right of another.

Where the consent of a parent, entitled to and who is receiving the services of a daughter, to dispense with such services is obtained by fraud, it is void, and furnishes no defense to an action by the parent against the perpetrator of the fraud for damages resulting from the loss of service.

In such a case where loss of service was shown, and it appeared that the daughter after being taken away from her father's house, was seduced by the defendant, *held,* that the jury had the right in their discretion to impose punitive as well as compensatory damages.

In an action by a father to recover damages sustained by the unwarranted interference of defendant with plaintiff's right to the services of his daughter, the following facts appeared: Plaintiff's daughter, who was seventeen years of age, generally lived and performed services in her father's family. Defendant, who was a married man, fraudulently representing to plaintiff that he had a legal right to marry, obtained from plaintiff and his wife a consent in writing to his marriage to their daughter. Defendant then took her away from home, seduced her and, after cohabiting with her two nights, she, on discovering that his statement was false, took poison and died. *Held,* that plaintiff was entitled to maintain the action for the unlawful interference with plaintiff's right to the services of his daughter; and that the jury had a right, in their discretion, to impose punitive damages.

Reported below, 54 Hun, 586.

(Argued October 27, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 11, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*F. R. Gilbert* for appellant. Plaintiff was guilty of contributory negligence and cannot recover. (*Segar* v. *Slingerland,* 2 Caines, 219; *Travis* v. *Barger,* 24 Barb. 614; *Smith*

v. *Martin*, 15 Wend. 270 ; *Rarnett* v. *Greathead*, 49 Barb. 106 ; 2 Greenl. on Ev. § 578.) The court erred in admitting testimony showing a promise of marriage existing between the parties. (*Foster* v. *Scoffield*, 1 Johns. 297 ; *Gillet* v. *Mead*, 7 Wend. 193 ; *Brownell* v. *McEwen*, 5 Den. 367 ; 26 Barb. 617 ; 2 Abb. [N. S.] 388.) There was no legal evidence upon which to base a verdict, and the plaintiff ought to have been nonsuited. (*Dain* v. *Wycoff*, 7 N. Y. 191 ; *Bartley* v. *Richtmyer*, 4 id. 38 ; *Mulvehall* v. *Millward*, 11 id. 343 ; *Morrison* v. *N. Y. & N. H. R. R. Co.*, 32 Barb. 568 ; *Robinson* v. *McManus*, 4 Lans. 386 ; *Alger* v. *Gardner*, 54 N. Y. 360 ; *Knight* v. *Wilcox*, 14 id. 415 ; *Ingersoll* v. *Miller*, 47 Barb. 47 ; *Hogan* v. *Cregan*, 6 Robt. 138 ; *White* v. *Nellis*, 31 N. Y. 405 ; *Bagley* v. *Bowe*, 105 id. 171.)

*Wm. C. Lamont* for respondent. If the paper consenting to the marriage of Edith with defendant was procured by false and fraudulent representations, then it was no consent and entirely unavailing. It left defendant in the same situation as if he had, secretly and by force, in the night time, taken plaintiff's daughter from her home. (*People* v. *DeLeon*, 13 N. Y. S. R. 588.) Plaintiff made out a good cause of action. (*Lipe* v. *Eisenlord*, 32 N. Y. 229 ; *Lawrence* v. *Spencer*, 90 id. 669.) This action can be maintained without pregnancy or disease. (*White* v. *Nellis*, 31 N. Y. 405, 408 ; 31 Barb. 279 ; 47 id. 47 ; 44 id. 589 ; *Lipe* v. *Eisenlord*, 32 N. Y. 236 ; 2 Sedg. on Dam. [7th ed.] 312 ; *Manville* v. *Thompson*, 2 C. & P. 303 ; *Hewitt* v. *Prime*, 21 Wend. 79 ; *Furman* v. *Van Sise*, 56 N. Y. 441.) No error was committed on the trial, of which defendant can complain. The doctor had no right to testify to and receive statements from Edith Lawyer. (Code Civ. Pro. § 834 ; 80 N. Y. 295 ; 24 Hun, 43.)

POTTER, J. This action was brought by plaintiff against defendant to recover damages, as alleged in the complaint, for the abduction of plaintiff's infant daughter from the service of the plaintiff, her father, and also for seduction while she was

absent from her father's house.    It appears that the defendant, who is a man sixty years of age and has a wife from whom he is not legally divorced, and who is living absent from him, on the 6th of May, 1886, came to the plaintiff's house and had an interview with the plaintiff, as well as his daughter.

On the sixteenth day of May following he again came to the plaintiff's house and had an interview with him and plaintiff's wife upon the subject of marrying Edith, plaintiff's daughter.    During the interview with the plaintiff upon the latter day upon the subject of the marriage of defendant to plaintiff's daughter, there was a conversation between them in regard to his legal right to contract marriage, and whether the conditions of separation of defendant from his wife were such as to allow of a valid marriage between defendant and plaintiff's daughter.    The defendant represented that he had a legal right to marry, and the defendant drew a consent or contract to carry out such design, and induced the plaintiff and his wife to sign it.    The consent or contract was in these words:

" *To Home it May Concern :*  We the undersigned are the father and mother of the bearer Edith Lawyer, Whereas Edith and P. J. Fritcher of Sharon wish to be united we give our consent to their contracts.

" RICHMONDVILLE, *May* 16, 1886.

"PETER LAWYER
"CATHERINE LAWYER."

Said Catherine Lawyer was not able to write her name, and Edith was requested to sign her name for her and did so. After these representations were made and this instrument signed, the defendant carried Edith to Portlandville, in Otsego county, a distance of about thirty miles from her home and residence of plaintiff; staid at a public house at that place, and said to the lady who kept the house that he was married; occupied the same bed with Edith on the night of the seventeenth.    The next day defendant carried Edith to Sharon, Schoharie county, where he resided, and stated to his housekeeper, who was a sister of Edith, that she was his

wife. On the night of the eighteenth of May the defendant and Edith occupied the same room and the same bed. After Edith arrived there, and during the eighteenth and nineteenth days of May, there was a conversation between Edith and Julia, her sister, defendant's housekeeper, in which Julia told Edith that the defendant could not marry; that he had a wife living and was not divorced from her.

Edith, the plaintiff's daughter, was about 17 years of age, generally lived in her father's family, and performed service for him, though she did work out occasionally, but her father had received her wages.

Among the declarations made at the interview of the sixteenth between plaintiff and defendant, the plaintiff testifies that the defendant said: "I am just as clear from my wife as though I never had married her." The plaintiff also testified that he believed such statement to be true. This statement and belief preceded the signing of the paper above set forth.

On the seventeenth or eighteenth day of May, and after defendant had arrived at his home and made the statements above to Julia, she procured from a drug store in the vicinity of defendant's residence some poison. Edith partook of that poison and died of it on the twentieth day of May.

The principal question involved in this case is whether the plaintiff proved a loss of service and damage in consequence thereof sufficient to maintain the action. The trial judge charged the jury that the plaintiff was not entitled to recover damages for any loss of service by reason of the taking of the poison and the death of Edith in consequence. Nevertheless, the jury, under the charge of the court, found a verdict in favor of the plaintiff of $800, besides costs.

The General Term was not unanimous in affirming the judgment on the verdict of the jury. One of the learned judges, as shown by his dissenting opinion, uses the following language, which indicates the view taken by him and the grounds for his dissent from the affirmance of the judgment: "The defendant, a married man, over 60 years of age, took plaintiff's daughter Edith about seventeen years old, from her

father's house, on Monday, May seventeenth. He did this with the consent of the parents; but the verdict of the jury establishes that he obtained this consent by fraud. That night he stayed with her at a hotel and occupied the same bed with her, saying to the landlady that Edith was his wife. *  *  * The next day, after dinner, Edith became sick. She had taken poison. The day following, Thursday the twentieth, she died from the effects of the poison. Before death she told her sister that she took poison because she did not want to live and that she did not want to see anybody. There was evidence that Edith had recovered from her usual monthly courses a week before she went away with defendant, and that before her death her underclothes were spotted with blood, which a physician supposed to be the menstrual flow. The important point in this case is whether on these facts the court could properly submit to the jury the question whether the plaintiff sustained damage other than that of death, for loss of service by reason of the seduction. It will be seen that there is no evidence of seduction before Monday night; no evidence of Edith's condition from Monday night till Wednesday noon, when she took the poison, and, of course, no evidence of pregnancy."

I should not feel justified in departing from my rule in this court not to write an opinion upon the affirmance of a judgment in a common and ordinary case, except to reconcile differences of opinions by the judges of the court below and to remove any resort to strained or doubtful reasoning to sustain the judgment appealed from, by a brief presentation of a feature of the case that was not distinctly brought out in that court.

This action was brought to recover damages which the plaintiff alleged he has sustained by the unwarranted interference of the defendant with plaintiff's right to service. It is as well settled that he who unlawfully interferes with another's right of service, whether it be the service of a male or female, a minor or an adult, is liable for actual or compensatory damages in the same manner and upon the same grounds

that he would be liable for an unlawful interference with any other property right of another.

The plaintiff alleges that he is the father of Edith Lawyer, that at the time of the acts of the defendant complained of by the plaintiff, she was seventeen years of age and was residing with the plaintiff, and that he was entitled to her services, and that without the consent of the plaintiff, the defendant on or about the 16th day of May, 1886, enticed and persuaded the said Edith Lawyer to leave the residence and service of the plaintiff and to accompany him (the defendant) to Portlandville, in the county of Otsego, etc.

The plaintiff also alleged that on the 17th day of May, 1886, the defendant debauched the said Edith, etc.

The evidence in this case establishes beyond question that on and previous to the 16th day of May, 1886, Edith was the servant of plaintiff both in law and fact. It follows from that relation that plaintiff was entitled to command and to have her services wholly and without interruption, save such time as was necessary for her rest, health and preservation, until the plaintiff should give a valid consent to dispense with the service or the law should terminate the relation.

The defendant came to plaintiff's house, where she was in fact performing and was in law bound to perform services for the plaintiff, and took her from and deprived the plaintiff of such service.

If this was done, as plaintiff alleges, without his consent, the defendant is liable to make plaintiff compensation for the loss of service. If the plaintiff's consent was obtained by defendant through fraud, it was void, for fraud vitiates all contracts and all consents. Consent or no consent was one of the issues to be tried by the jury, and the jury has found upon competent evidence for that purpose that any consent given by plaintiff was given through fraud and so was no consent. With this finding by the jury the court cannot interfere. Edith was taken away from the plaintiff by the defendant and remained with him at a hotel, and on the way to defendant's home and at his home for the space of four days, and the plaintiff was in the

meantime deprived of her services and his right to them was unlawfully interfered with.

The gravamen of the action and of all actions of this nature is the loss of service, *and both the pleadings* and the proofs in this case make out a cause of action in entire harmony with the fullest requirements of such actions and entirely dispense with any necessity or occasion to resort to *fiction* as is said to be done in some instances to maintain the recovery of damages in these cases.

In the aspect we have been considering this case, it presents an actual and measurable pecuniary damage to the plaintiff. The loss of service constitutes the cause of action and it can make no difference as to the right of action whether that has been accomplished by an unlawful persuasion of the servant to leave the master's employment or through fraud upon the master or force upon the servant, or by both such fraud and force.

The loss of service is the cause of action and when that is established, a basis for damages to some extent exists, and whether that loss is caused or attended or followed by sexual intercourse, defilement or pregnacy, loss of health or disability to serve, or for the purpose or with the intention of obtaining those results through a formal but criminal marriage, has relation more especially to the damages the plaintiff may recover than to his cause of action.

It is true the complaint charged debauchment and ill health as a consequence, as well as the taking of the servant from the master. Whether the debauchment was proven or not, the taking away by the defendant was proven without any contradiction and this gave plaintiff a cause of action and a right to damages. In such cases the jury have the right to impose punitive damages in their discretion in addition to compensatory damages.

I think these views are abundantly supported by numerous decided cases, to a few of which I make reference and extracts. Judge ANDREWS in *People* v. *DeLeon* (109 N. Y. 229), says: "In *Regina* v. *Hopkins* (Car. & M. 254), the case of an

indictment for the abduction of an unmarried girl under sixteen years of age 'against the will' of her father, it appearing that the consent of the parents was induced by fraud, the indictment was sustained and GURNEY, B., said (in that case) 'I mention these cases to show that the law has long considered fraud and violence to be the same.'"

In *Lipe* v. *Eisenlord* (32 N. Y. 233), (which was an action by the father to recover damages for the seduction of his daughter who was 29 years of age but living in her father's family) this language is used, " and any illegal act by which the right of the father, such as it was, to her services was interfered with to his detriment, was a legal wrong for which the law affords redress." ·

On page 236 of the same case the court uses this language : " Finally it is urged by defendant's counsel that only compensatory damages should have been allowed. The judge refused so to direct the jury and I think he was right. The object of the action in theory is to recover compensation for the loss of the services of the person seduced. This is so far adhered to that there must be a loss of that kind, or the action will fail ; but when that point is established, the rule of damages is a departure from the system upon which the action is allowed. The loss of service is often merely nominal, though the damages which are recovered are very large. It is too late to complain of this as a departure from principle, for it has been the law of this state and of the English courts for a great many years."

The same court, further on in the opinion, uses this language : " The true rule (this being an action brought by plaintiff for the seduction of his daughter) I think is that the plaintiff's right to the services may be made out in either way, and that when established so that the action is technically maintainable, the court and jury are to consider whether the plaintiff, on the record, is so connected with the party seduced as to be capable of receiving injury through her dishonor. A mere master, having no capacity to be injured beyond the pecuniary worth of the services lost, should undoubtedly be

limited in his recovery to the value of these services. But the case of this plaintiff, as has been mentioned, is quite different."

In *Hewit* v. *Prime* (21 Wend. 79–81–82), Judge NELSON, in delivering the opinion of the court in an action like the one under consideration, uses this language: "It is now fully settled, both in England and here (citing several authorities in both countries), that acts of service by the daughter are not necessary; it is enough if the parent has a right to command them, to sustain the action.    *    *    *    The ground of the action has often been considered technical, and the loss of service spoken of as a fiction, even before the courts ventured to place the action upon the mere right to claim the services; they frequently admitted the most trifling and valueless acts as sufficient."

Further on in the opinion, the judge uses this language: "The action, then, being fully sustained, in my judgment, by proof of the act of seduction in the particular case, all the complicated circumstances that followed come in by way of aggravating the damages."

In *White* v. *Nellis* (31 N. Y. 405–407–409), (which was an action for debauching plaintiff's minor daughter, and communicating to her a venereal disease by which she was made sick and unable to labor), the judge uses the following language: "Whenever the wrongful act, by immediate and direct consequences, deprives the master of the service of his servant, or injuriously affects his legal right to such service, the law gives a remedy. It is not sufficient to sustain the action to prove the seduction merely. That is the wrongful act from which it must appear that a direct injury to the relative rights of the master has followed. The right of the master, as recognized by the law, is to have the services of the servant undisturbed by the wrongful act of another.    *    *    *    In cases of debauchery, the ordinary consequences that affect the master are the pregnancy and lying-in of the servant, during which she is unable to render him service. Hence the precedents of pleadings in this form of action have perhaps invariably alleged a loss of service through those consequences. But it

by no means follows that there is no remedy where the loss of service is the direct effect of the wrongful act, although produced by some other consequence. All that the law can require is *damnum et injuria*, for these constitute, when directly connected, the proper and complete elements of an action on the case. And whenever they combine as an immediate cause and effect, the law cannot deny a remedy without a departure from principle.

"It is maintainable because a wrongful act has caused a direct injury to a lawful right. In such case, the right of the master to a remedy for an injury to his enjoyment of the services of his servant is equally clear, whether it be produed by beating and wounding the servant, or enticing him from employment, or forcibly abducting him, or wrongfully debauching and impregnating with child or with disease. Nor, in my judgment, does the remedy depend upon the sex of the servant. * * * We have now to determine the abstract right to maintain any action at all; and that is something quite independent of the question what damages may be recovered if the action be allowed."

In the case of *Ingerson* v. *Miller* (47 Barb. 47, 50), the General Term use this language: "It is no objection to the maintenance of the action that no expense or actual loss of service is proved. It is sufficient that the father was at the time entitled to the services of the daughter, and might have required them had he chosen to do so." "The master has a property in the labor of his servant, and any wrongful act creating or producing a disability in the servant to perform what the master has a right to require, operates as a disturbance or infringement of such right to which the law will attach at least nominal damages as a result of the injury." "But proof of the slightest loss of service or the most trifling injury, if the direct result of the wrongful act, is sufficient to uphold the action."

In *Badgley* v. *Decker* (44 Barb. 588), the opinion of the court at General Term holds this language: "There was evidence in this case sufficient to go to the jury upon the ques-

tion of the relation of master and servant existing between the plaintiff and her daughter. The slightest degree of service has been holden sufficient to maintain the action and to allow a recovery for the heaviest damages, * * * but to accommodate the action to cases where the daughter rendered no service, a presumed or a fictitious service is resorted to as the gravamen."

The judgment should be affirmed, with costs.

All concur, except Parker, J., not sitting.

Judgment affirmed.