# Staunton.

## J. R. STANLEY v. W. E. RASNICK.

September 20, 1923.

1. MARRIAGE—*Licenses—Girl Under Twenty-one—Suit by Father Against Clerk for Forfeiture Imposed by Section 5094, Code of 1919.*—Section 5094, chapter 204, of the Code of 1919, provides that any clerk who fails to perform any duty required of him under that chapter shall forfeit $10 for each offense.

   *Held:* That under the provisions of sections 2577 and 2543 of the Code of 1919 the forfeiture in question is to the Commonwealth, so that the father of a girl under twenty-one has no right to sue for the forfeiture where a clerk in violation of section 5072 issued a marriage license for the marriage of such girl.

2. MARRIAGE—*Suit by Father for Loss of Services of Infant Daughter—Clerk Issuing License in Violation of Statute.*—A father has no right to sue a clerk of court, who issued a marriage license contrary to statute, for the loss of services of his infant daughter, occasioned by and following the marriage of the daughter who, being of lawful age so to do, consented thereto without force or imposition.

3. PARENT AND CHILD—*Marriage—Suit by Parent for Loss of Child's Services.*—An action by a parent for loss of his child's services and society will not, unless given by statute, lie against any one for the loss of an infant child's services after marriage, although the marriage has been brought about by the wrongful and illegal enticing of the child into marriage, or the wrongful and illegal aiding and assisting in bringing about the marriage of the child, where the child is of the age of consent to marriage, and consented thereto without force or imposition, and the marriage is, either at common law or by statute, a valid marriage.

4. MARRIAGE—*Defective License—Validity of Marriage—Common Law Marriage—Marriage of Infants.*—Although common law marriages are void in Virginia, under the provision of section 5082 of the Code of 1919, the validity of a marriage is not affected by the want of authority of the person issuing the marriage license, or any defect, omission or imperfection in such license. Accordingly, the marriage of an infant is valid, although the license was issued by the clerk without the authority of the parent or guardian of the infant in writing, as required by section 5072 of the Code of 1919.

Error to a judgment of the Circuit Court of Dickenson county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

This is an action of trespass on the case in which the declaration contains two counts, which, so far as material, are as follows:

"* * * that heretofore, to-wit, at the time of the commission of the grievances hereinafter complained of, the defendant was county clerk for Dickenson county, and as such clerk of the Circuit Court for Dickenson county. As such clerk, it was and became his duty to do and perform all the acts and services required of the clerk of the Circuit Court for Dickenson county, Virginia, required and imposed by law, and the statute of Virginia to be so done and performed. It became and was the duty of the clerk of the Circuit Court for Dickenson county (imposed upon him by section 5072 of the Code of Virginia), that every license for a marriage shall be issued by him. It, therefore, became and was the duty of this defendant to refuse to issue a license for the marriage of any person under twenty-one years of age, unless and until authorized so to do by the father or guardian of said infant, in person to the said defendant, or in writing subscribed by a witness, who shall make oath that the said writing was signed or acknowledged in his presence by said father or guardian, or said writing shall be acknowledged before a notary public or other officer, and properly certified by the said officer.

"Yet this plaintiff in fact saith that this defendant not regarding his said several duties and obligations imposed upon him by law, but wrongfully and wickedly contriving and intending to injure the said plaintiff and

to deprive him of the services, assistance, comfort, fellowship and society of Viola Stanley, the sixteen year old daughter of the said plaintiff, heretofore, to-wit, on the _____ day of July, 1920, without and not having been authorized so to do by the said plaintiff, as required by law, unlawfully and illegally issued in due form of law and properly attested by the said defendant, as clerk of the Circuit Court for Dickenson county, as aforesaid, license for the marriage of plaintiff's daughter, Viola Stanley, who at that time was, and so known to the said defendant, under the age of twenty-one years, to-wit, the age of sixteen years; and thereby and by such means plaintiff's daughter became to him, wholly and completely emancipated, and thereby the said plaintiff lost and was deprived of the service, comfort, fellowship, society and aid of his said daughter. To the damage of this plaintiff in the sum of five thousand dollars.

"And for this also, to-wit, that heretofore, to-wit, the said defendant at the time and place, and in the manner as in the first count in this declaration mentioned above, was clerk of the Circuit Court of Dickenson county, and so performing the duties, in the manner as in the first count of this declaration set forth, to which and to each and every allegation thereof reference is hereby made, and all of which is adopted as part of this count, the same as if herein again set forth again.

"That for the failure of the said defendant to do or to perform any of the acts above alleged as being imposed and enjoined upon him by law, the said defendant forfeits ten dollars.

"Yet this plaintiff, in fact saith, the said defendant, not regarding his several duties in this, to-wit, to refuse to issue a marriage license for a person under the age of twenty-one years, without having first obtained the con-

sent of the said person's father or guardian, in the manner required by law, did willfully and unlawfully, on the _____ day of July, 1921, issue to Viola Stanley, a person under the age of twenty-one years, and at the time so known to him, in violation of the duty imposed upon him by section 5078 of the Code of Virginia, marriage license; wherefore, this plaintiff says he is entitled to recover of the said defendant the said forfeiture.

"To the damage of the said plaintiff of five thousand dollars.   And, therefore, he brings his suit."

The defendant filed the following demurrer to the declaration:

"The defendant comes· and demurs to plaintiff's declaration because same is not sufficient in law, in this, that it does not allege any cause of action in the plaintiff.

"1.   There is no right, either under the common law or by statute, given a parent to sue an officer for issuing marriage license to an infant child without the proper authority.

"2.   The forfeiture statute evidently means a forfeiture to the Commonwealth, and not to an individual."

The court sustained the demurrer and dismissed the action.

*S. H. & Geo. C. Sutherland*, for the plaintiff in error.

*A. A. Skeen* and *C. R. McCoy*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

There are only two questions which are involved in the case and which are presented for decision by the

assignments of error, and they will be disposed of in their order as stated below.

[1] 1. Had the plaintiff the right to sue for the forfeiture imposed by section 5094 of the Code, under which the forfeiture mentioned in the second count of the declaration is sought to be recovered?

The question must be answered in the negative.

Section 5094, chapter 204, of the Code, is as follows:

"If any clerk of a court or county clerk fail to perform any duties required of him under this chapter he shall forfeit ten dollars for every such offense."

Section 2577 of chapter 102 of the Code provides as follows:

"Whenever the word 'fine' is used in this chapter it shall be construed to include a pecuniary forfeiture, penalty and amercement."

Section 2543 of such chapter (102) of the Code provides as follows:

"Where any statute imposes a fine, unless it be otherwise expressly provided, or would be inconsistent with the manifest intention of the General Assembly, it shall be to the Commonwealth and recoverable by presentment, indictment or information."

Sections 5075, 5076, 5077, 5078, 5092 and 5096 of chapter 204 of the Code all require certain duties to be performed by the clerk, the nature of many of which is such that it is plain that the public as a whole, rather than individual persons, are chiefly interested. And, since section 5094 classes the failure of the clerk to perform each and all of such duties alike, namely, as an "offense" for which the same forfeiture of ten dollars is imposed, it cannot be said that it "would be inconsistent with the manifest intention of the General Assembly" for the forfeiture to be to the Commonwealth. Further, it is not "otherwise expressly provided." Hence, we are of

opinion that, under the provisions of sections 2577 and 2543, aforesaid, the forfeiture in question is to the Commonwealth, so that the plaintiff had no right to sue for its recovery.

[2] 2. Had the plaintiff the right to sue for loss of services of his infant daughter, occasioned by and following the marriage of the daughter (who being of lawful age so to do, consented thereto without force or imposition), as claimed in the first count of the declaration?

The question must be answered in the negative.

No authority is cited for the plaintiff which sustains such a right of action. 1 Bl. Com. 429; Long on Dom. Rel., secs. 162, 167; *Lawyer* v. *Fritcher*, 130 N. Y. 239, 29 N. E. 267, 14 L. R. A. 700, 27 Am. St. Rep. 521; *Howell* v. *Howell*, 162 N. C. 283, 78 S. E. 222, 45 L. R. A. (N. S.) 867, Ann. Cas. 1914A, 893-4, and notes 896; cited and relied on for plaintiff, all involve actions for enticement or forcible abduction, not followed by the voluntary marriage of a child of age of consent to the marriage. And the reference, in *Eyre* v. *Countess of Shaftsbury*, 2 White & Tudor's Equity Cases, Pt. 2, p. 121, to the holding in 3 Co. 38 (*Ratcliff's Case*), cited and relied on for plaintiff, "that every ancestor, whether male or female, might bring an action of trespass for ravishment of ward against any one for taking away his heir apparent, male or female, and for marrying such heir, and it is not material of what age such heir then was," has no application to the instant case, since the law of *primo geniture* has been abolished with us since January 1, 1787 (12 Hen. Stats. 138).

[3] On the other hand, the authorities in this country are unanimous in their holding that an action by a parent for loss of his child's services and society will not, unless given by statute, lie against any one for the loss

of an infant child's services after marriage, although the marriage has been brought about by the wrongful and illegal enticing of the child into marriage, or the wrongful and illegal aiding and assisting in bringing about the marriage of the child, where the child is of the age of consent to marriage and consented thereto without force or imposition, and the marriage is, either at common law or by statute, a valid marriage. Schouler's Dom. Relations (2d ed.), top p. 354; 26 Cyc. 852; 29 Cyc. 1641-2.

As said in Schouler's Dom. Rel., just cited: "There must be a reasonable limit to suits by the parent for the loss of his child's society and services. Hence, it is now well settled in this country that the parent cannot sue for enticing his child into a marriage against the parent's consent." Citing *Jones* v. *Tevis*, 4 Litt. (14 Ky.) 25, 14 Am. Dec. 98; *Hervey* v. *Moseley*, 7 Gray (Mass.), 479, 66 Am. Dec. 515; *Goodwin* v. *Thompson*, 2 G. Greene (Iowa) 329; and *Hills* v. *Hobert*, 2 Root. (Conn.) 48. The same authority adds the following: "* * the marriage statutes not infrequently provide penalties to be meted out to offenders, who aid and encourage infants in evading statutes requiring the consent of parents or guardians. But for drawing children of suitable age into a marriage which pleases themselves, the law affords no remedy; nor can it punish for the sake of parental discipline. And even though the marriage be unhappy, yet marriage must supersede the filial relation." Citing 3 Bl. Com. 140, and notes.

As said in 26 Cyc. *supra* (852): "In the absence of statute, an officer is not liable in damages to a parent for the marriage of a minor under a license issued without the parent's consent." Citing *Holland* v. *Beard*, 59 Miss. 161, 42 Am. Rep. 360; and *Wilkinson* v. *Dellinger*, 126 N. C. 462. 35 S. E. 819.

In 29 Cyc. *supra* (1641-2), this is said: "It has been held that a father cannot recover damages for the loss of services against a person for procuring the marriage of his daughter, who has in good faith and without force or imposition entered into the marriage contract." Citing the above mentioned Kentucky and Iowa cases.

In Cooley on Torts (2d ed.), sec. 230, the following is said: "In Connecticut it was held, at an early day, that the father might sustain an action against one who enticed his minor daughter from his service and procured her to be married to another person without his consent. The marriage, however, was averred to be fraudulent and to have been procured in order to obtain a discharge of a relative of the defendant from a prosecution for bastardy; and it was also averred that the marriage had been annulled by the legislature for the fraud." Citing *Hills* v. *Root, supra.* In Kentucky where no fraud in the marriage was averred, it was decided that the action might be maintained for enticing the minor daughter from her mother's service and procuring her to be married, but that the recovery of damages must be restricted to the time which elapsed previous to the time when the marriage actually took place." Citing *Jones* v. *Tevis, supra.* In Massachusetts it is denied, with much good reason, that any such action can be maintained—the girl being of the age of legal consent, even though by statute the conduct of the defendant would have been punishable as a crime." Citing *Hervey* v. *Moseley, supra.* "The reason is clearly and tersely stated in the opinion: 'The law of marriage entirely overrides the general principles of right of the parent to the services of the child, or the duties from one to the other as servant and master, by allowing the female child to terminate it at any moment, after she arrives at the age of twelve years, by

uniting herself to some one in marriage. If the marriage of the daughter was a legal act, from the time of its consummation the daughter was legally discharged from all further duties to perform services for her parents, having assumed relations inconsistent therewith.'"

. As said, *Idem*, section 237, page 278: "* * Previous to the child's legal emancipation, the parent is entitled to control his actions, and may rightly withhold consent from a contemplated marriage, and break it up. But, on the other hand, the child, if over the age of consent, may enter into the relation of marriage if he can succeed in doing so, and the relation will be perfectly legal and valid. Here is an apparent conflict of rights; but a real conflict of rights can never exist; for what one has a lawful right to do, another cannot have a lawful right to prevent. The solution of the apparent difficulty is to be found in this: The minor child has not, in strictness of law, when he reaches the age of consent, the right to form the relation of marriage, but only the *capacity* to do so. The age of consent is merely the age fixed by the law, below which a marriage is voidable. The marriage of a minor above that age, though in strictness of law it should not be formed without parental consent, is nevertheless sustained on grounds of public policy; and parental rights are made to yield to it. The parent may prevent the marriage if he can, but failing in this, his rights are incidentally abridged by the marriage, as they would be if consent were given. The marriage displaces parental rights, instead of creating a conflict." Citing *Goodwin* v. *Thompson*, and *Holland* v. *Beard, supra.*

Both in *Holland* v. *Beard, supra* (59 Miss. 161, 42 Am. Rep. 360), and in *Wilkinson* v. *Dellinger, supra* (126 N. C. 462, 35 S. E. 819), the action was founded on the dereliction of duty of a clerk in issuing the license

for the marriage of an infant daughter without the consent of the parent required by statute (which resulted in the marriage of such daughter under the license without such consent), just as is true of the instant case; and in those cases, as in the instant case, the daughter was above the age of consent to, and without force or imposition entered into the marriage relationship. The marriage age of consent of a female in Virginia is by statute (Code, section 5090) twelve years, the same as at common law. The age of the daughter in the instant case was sixteen years.

In the opinion of the court in *Holland* v. *Beard* this is said: "It is unnecessary to consider the value of the services of the daughter between the time when she left home and that at which she was married, for the appellees are not complained against for enticing away the daughter. The only allegation of wrong is that the license was illegally issued, and the license, it is clear, performed no function until the very moment of the marriage. The single question, therefore, presented is whether a father can recover damages against one who actively participates in bringing about the marriage of his child, who is under the age of eighteen years, the father not consenting thereto. If the marriage itself is illegal because of the want of assent by the parent, then the chain of parental authority remaining unbroken, the right of the father to the services of the child continues, and the action may be maintained.

"It is questionable whether in the United States there are any decisions to the effect that the validity of the marriage is impaired by the illegal issuance of the license, or by want of parental consent. On the contrary, the rule is well settled that 'a marriage good at common law is good notwithstanding the existence of any statute on the subject, unless the statute contains express words of nullity,'    *    *.

"The right of the parent to the custody and services of the child, though it is said to arise from nature, and to be reciprocal to the duty of the parent to nurture and support the child during infancy, it is nevertheless dependent upon the laws of organized society for its protection and enforcement, and since society will not compel the performance of obligations, which tend to its own subversion, it limits or destroys the natural rights of individuals which are not consistent with its welfare. The duty of the parent to provide for the child and the corresponding duty of the child to submit to the control of the parent are enforced, not because they are natural duties, but because their performance are conducive to the public good. When, therefore, the preservation of the harmony of the social system requires the protection of the other antagonistic relations, that of parent and child, in so far as it is the source of legal rights, is dissolved. From the moment of the marriage the husband and wife assume toward each other duties in the performance of which society is vitally interested, and which it will not permit to be hampered or obstructed by the assertion of conflicting rights by others. It is immaterial that one or both of the contracting parties had impaired the rights of others by the marriage; the privilege and immunities of the relation are extended alike to the offending and the innocent, not because of the tenderness toward the offender, but because a status has been assumed which the public welfare requires shall not be disturbed.  *  *  *  An essential element in the marital relation is the right of the husband to the society and services of the wife, to the exclusion of all rights of parents, and therefore a legal marriage is a legal emancipation from the parental control. The damage which the appellant has sustained resulted from a legal act, the effect of which was to displace his right to the service of his daughter; the

damage is, therefore, *damnum absque injuria,* and this action is not maintainable." Citing *Jones* v. *Tevis, Hervey* v. *Noseley, Goodwin* v. *Thompson,* Cooley on Torts, and Schouler's Dom. Rel. *supra.*

The opinion of the court in *Wilkinson* v. *Dellinger* is to the same effect, except that no mention is made of the rule that "a marriage good at common law is good notwithstanding the existence of any statute on the subject, unless the statute contains express words of nullity."

[4] It is urged in argument for the plaintiff that under *Offield* v. *Davis,* 100 Va. 250, 40 S. E. 910, the rule just mentioned is not the law in Virginia; that under that decision common law marriages are void in this State; and that, hence, the holding in *Holland* v. *Beard,* at least (and perhaps in *Wilkerson* v. *Dellinger* also), is not applicable in Virginia. Counsel frankly state that they are not informed (nor are we) whether the marriage involved in the latter case was made valid by the common law rule aforesaid, or by some statute. We think that that is immaterial. The first count of the declaration alleges, in substance, that the marriage consummated under the license in the instant case was in fact a valid marriage; and so, in truth, it was, under the provisions of section 5082 of the Code of Virginia, adopted since the decision in *Offield* v. *Davis.* The marriage, being valid, on principle, the result inevitably followed which is embraced in the holding of the two cases next above mentioned and in the other authorities above quoted. It is obvious that such holding is based on the result which must flow from the validity of the marriage, and not from the circumstance that the marriage may have been made valid by the common law or by statute.

This case will be affirmed.          *Affirmed.*