## TALCOTT v. NATIONAL EXHIBITION CO.

(Supreme Court, Appellate Division, Second Department.   April 21, 1911.)

1. FALSE IMPRISONMENT (§ 5*)—ACTS CONSTITUTING.

Where a person went inside the inclosure of a ball ground to purchase a ticket for a game, and, finding there were none left, attempted to leave, but the crowd, which was very large, pushed in through the usual exits, and special policemen of the ball company prevented the plaintiff from going out through such exits, and detained him there for some hours, a temporary interference with the plaintiff's legal right of egress could be justified as a proper police measure to suppress disorder and danger; but defendant owed the plaintiff the active duty to point out other means of egress, and was guilty of falsely imprisoning him in failing to do so.

[Ed. Note.—For· other cases, see False Imprisonment, Cent. Dig. §§ 3, 4; Dec. Dig. § 5.*]

2. FALSE IMPRISONMENT (§ 36*)—DAMAGES—EXCESSIVENESS.

In view of the fact that all damages awarded in cases of false imprisonment partake of the nature of smart moneys, an award of $500 damages to one falsely imprisoned in a ball park for an hour or so was not excessive, even though he was not physically injured and showed no special damage.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 110–115; Dec. Dig. § 36.*]

Appeal from Trial Term, Westchester County.

Action by Frederick L. Talcott, Jr., against the National Exhibition Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

E. Mortimer Boyle (Cornelius J. Sullivan, on the brief), for appellant.

Charles P. Blaney, for respondent.

CARR, J.   The defendant appeals from a judgment of a Trial Term of the Supreme Court in Westchester county, entered upon a verdict of a jury in an action for false imprisonment, and from an order denying a motion for a new trial.   The facts are as follows:

On the morning of the 8th of October, 1908, the plaintiff went into the inclosure of the defendant in the city of New York to buy some reserved seats for a baseball game which was to be held there in the afternoon of that day.   These seats were sold at a number of booths within the inclosure.   The plaintiff was unsuccessful in his quest, as all the reserved seats had been sold.   He tried to leave the inclosure through some gates used generally for ingress and exit.   A considerable number of other persons were trying to leave the inclosure through the same gates at the same time.   It appears that the baseball game which was to take place was one of very great importance to those interested in such games, and a vast outpouring of people were attracted to it.   Many thousands of these came early in the day to seek admittance to the ball grounds, and the result was that the

various gates used generally for entrance or exit were thronged with a dense mass of people coming in. The plaintiff was prevented by the servants of the defendant from attempting to pass out through this throng, and as a result of this interference he was detained in the inclosure for an hour or more, much to his annoyance and personal inconvenience. The plaintiff and those similarly situated made many attempts to get out through these gates, and in the restraint put upon them to defeat their efforts they were subjected to some hauling and pushing by the defendant's special policemen. Finally the plaintiff and the others were taken through a club house within the inclosure and allowed to go out through the entrance to the club house to the street.

[1] Concededly the plaintiff had a legal right to leave the inclosure, and the defendant had no legal right to detain him therein against his will. But the right of each had corresponding duties. A temporary interference with the plaintiff's legal right of egress could be justified as a proper police measure, if the plaintiff sought to exercise such right under circumstances likely to create disorder and danger. Assuming, however, that the defendant was justified in preventing the plaintiff from passing out through the gates in question, it should have directed him to pass out through some other means of exit, if there were any. The plaintiff told the agents of the defendant of his desire to get out, but received no directions or suggestions how to get out. The defendant claims that the plaintiff might have gone out through other gates in another portion of the field used for the entrance of motor cars and other vehicles; but the plaintiff swears that he did not know of the other gates, and there is no proof that his attention was called to them in any way when he and the others sought to go out. He got out in the end, not through the gates for vehicles, but through the club house, on the permission and direction of the defendant. Granting that the restraint placed upon the plaintiff in preventing his going out through the gateways through which he sought exit was justifiable as a police measure, yet the defendant owed him an active duty to point out the other existing methods of egress. It could not stand idly by, and simply detain and imprison the plaintiff against his will.

[2] We see no reason to interfere with the verdict of the jury in its finding that the plaintiff's detention was unjustifiable under the circumstances. The damages awarded were in the sum of $500. The plaintiff proved no special damage, nor was he obliged to. All damages awarded in cases of false imprisonment partake to some extent of "smart moneys," and the sum awarded here is not so excessive as to justify interference on our part.

The judgment and order are affirmed, with costs. All concur.