AMELIA CARROLL, Respondent, *v.* GIMBEL BROTHERS, NEW YORK, Appellant.

First Department, March 4, 1921.

**False imprisonment — action by alleged shoplifter for damages for unlawful arrest and detention resulting in neurasthenia — verdict contrary to evidence — erroneous rejection of evidence as to confession of theft of other articles — extent of best evidence rule — insufficiency of evidence as to existence of neurasthenia.**

Plaintiff sought damages for her alleged unlawful arrest and detention by the members of the detective force of a department store on the charge of stealing certain thimbles. Plaintiff's evidence tended to show that she had entered defendant's store to purchase a thimble, and, on being informed that it could not be exchanged, left the store when she was accosted by a store detective, taken to the defendant's office and searched, the thimble not being found. Defendant's evidence tended to show that when plaintiff was searched articles from defendant's drug department were found in her bag, which she acknowledged taking and requested that she be allowed to pay therefor; that she was seen both by a detective and at least one disinterested witness to take two or three thimbles from the tray, go to the basement and not return them; that the saleslady having charge of the thimble counter noticed the loss of the thimbles on returning from waiting on a customer; that three thimbles were later found in a box on the floor of the room near where plaintiff sat during the investigation, and that a written confession of the theft of the other articles from defendant's store was signed by her after the same was read to and by her.

*Held,* that the verdict of the jury in plaintiff's favor was against the weight of the evidence.

It was substantial error to exclude testimony offered by the defendant that the several drug articles found in plaintiff's bag all bore the defendant's stamp and tag, on the theory that the articles themselves were the best evidence.

*It seems,* that the best evidence rule relates entirely to documentary evidence.

That plaintiff is suffering from neurasthenia is not proven by medical testimony by one physician to the effect that her physical condition was not "bad " except that she is of a nervous type. Her nervous condition is poor," and by another physician who had treated her ten times, professionally, to the effect that her ailment was neurasthenia, although supplemented by testimony of the plaintiff as to her nervous condition.

APPEAL by the defendant, Gimbel Brothers, New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on

the 31st day of January, 1920, upon the verdict of a jury for $3,500, and also from an order entered in said clerk's office on the 18th day of February, 1920, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*John E. Tracy* of counsel [*Rose & Paskus*, attorneys], for the appellant.

*George L. Donnellan,* for the respondent.

MERRELL, J.:

The plaintiff, respondent, has recovered judgment against the defendant, appellant, in the sum of $3,637.85, based upon the verdict of a jury in plaintiff's favor and against defendant for the sum of $3,500.

The action was brought to recover damages for the arrest and detention of the plaintiff by Gimbel Brothers, New York, a domestic corporation. The defendant conducts a department store near the junction of Sixth avenue and Broadway in the borough of Manhattan. The plaintiff testified that on December 18, 1918, shortly before six o'clock at night, she entered the department store of the defendant with a view of looking over their Christmas goods there displayed and with the intention of purchasing a thimble as a Christmas gift to a relative. Plaintiff testified that on the day in question she had left her home in the borough of The Bronx and had first gone to Hearn's department store on Fourteenth street in the city of New York, and had there made certain purchases of Christmas gifts, which she ordered sent to her home; that she then walked to the military hospital at Eighteenth street and Sixth avenue and there took the elevated to the store of R. H. Macy & Co. on Broadway near Thirty-fourth street, and that there she purchased certain articles, consisting of hair pins and drugs, and from there went through the department store of Saks & Co., and from there to the store of the defendant. Plaintiff testified that she entered the defendant's store on the Broadway side, and walking through the main floor, came to the thimble counter where she inquired of the saleswoman in charge with reference to purchasing a silver thimble for her sister as a Christmas present; that plaintiff

made some inquiry of the saleslady as to exchanging the thimble in case it was unsatisfactory, and was told that the exchange could be made only within three days; that plaintiff then told the saleslady that she would be unable to take the thimble as she could not revisit the store within that time; that she laid down the thimble that she had been inspecting and proceeded to look at other articles in the store, visiting the basement, and finally leaving the store by the Broadway entrance with a view of returning to her home in The Bronx. The plaintiff then testified that when she had left the store and was on the street and about to cross toward the east with a view of taking the Third avenue elevated she was arrested and forcibly detained by a woman whom she recognized as present at the trial and who was a Miss Hager, a detective and floorwalker in defendant's employ. Plaintiff testified that this detective commanded that she return to defendant's store and pay for the thimble she had stolen; that plaintiff inquired what thimble, and insisted that she had stolen no thimble and had no thimble; that the detective required that she return with her, and compelled her to do so against her remonstrance and statement that she wished to go home to her baby. Plaintiff testified that she was taken inside defendant's store and upstairs to a small room and was shortly ushered into another room and a search was made of her clothing and the handbag which she carried; that in the bag there were certain drug articles, consisting of lapactic pills, aspirin, sal hepatica and other articles, some half-dozen in number. Plaintiff testified that the detective searched her clothing with a view of finding the missing thimbles, but found none; that plaintiff insisted that she wanted to go home and was directed by the detective to keep quiet. The plaintiff testified that the drugs and other articles in her handbag she had purchased at Macy's before entering the defendant's store. Plaintiff said she was then ushered into a room where there were two men, and a list of the property contained in her handbag was taken, and that she was there compelled, through threats of imprisonment, to sign a general release and a confession that she had stolen the drug articles before mentioned. Plaintiff insists that she never had any knowledge of the contents of the papers which she signed; that she could not read without the

aid of glasses, and did not have her eye-glasses with her, and that she was in an extremely nervous condition and did not know the purport of the papers which she signed. She testified that after being detained about half an hour she was released and proceeded to her home. The plaintiff testified that as the result of her arrest and detention she became nervous and unstrung, and that her previous good state of health was ruined, and that she suffered great nervousness and debility as the result of the treatment which she had received from the defendant's employees.

As to her physical condition prior to and following her arrest, plaintiff swore her family physician who had treated her prior to the occurrence on December 18, 1918, and who testified that with the exception of family ailments, confinement, colds and general family sickness, the plaintiff was in good physical condition and was not nervous. The physician further testified that he had examined her shortly prior to the trial and that " her nervous condition is poor." The plaintiff also swore as a witness as to her physical condition Dr. John R. Farrell, who testified that he had treated the plaintiff since May, 1919, and that she was suffering from neurasthenia. With the exception of two witnesses who were permitted to swear to the plaintiff's good character and reputation, this completed the plaintiff's testimony.

The defendant first swore as a witness one Fanny Sheier, who testified that for a short time prior to the holidays in 1918 she was employed as a saleslady in the defendant's store, and that she was in charge of the thimble counter there at the time of plaintiff's visitation on December 18, 1918. Miss Sheier testified that on that occasion at plaintiff's request she exhibited to her a tray of silver thimbles, and that as her attention was attracted to another customer two or three of the thimbles were taken from the tray; that the witness missed the thimbles immediately upon turning around; that she saw at the time that the defendant's floorwalker, Miss Hager, had observed what had occurred, and gave no further attention to the matter. The witness Sheier was very positive that as she momentarily withdrew her eyes from the tray, two or three of the thimbles were taken from it.

Hattie J. Hager was sworn as a witness by the defendant

First Department, March, 1921.    [Vol. 195.

and testified that prior to Christmas, 1918, she was employed by the defendant as a detective and had had five years' previous experience at Bloomingdale's in a like capacity. Miss Hager testified that on the day in question she was walking about the store in the discharge of her duties, which were to see that merchandise should not be disturbed by customers; that shortly before closing time, at six o'clock in the evening, her attention was attracted by the plaintiff's actions; that she constantly turned around, looking about her; that she walked over to the silver counter where the thimbles were displayed, and that the witness watched her; that the plaintiff tried on several thimbles on her right hand from a tray which had been left by the saleslady who was attending to another customer; that the plaintiff placed one or two of the thimbles in the palm of her hand and walked away from the counter; that the witness followed the plaintiff down the store, and that the latter walked down into the basement, but before doing so again turned around; that as she walked down into the basement and was standing near the pole at the foot of the stairway plaintiff again looked around and did something with her skirt as though she was lifting it up, and put something in her underskirt; that shortly thereafter the plaintiff ascended to the main floor, and finally left the store by the Thirty-third street entrance. The witness testified that she then accosted the plaintiff and told her that she had forgotten to pay for the thimble; that the plaintiff denied having any thimble, and that the witness then told her that she had seen her taking a thimble, and that the plaintiff replied that she had not any thimble. The witness testified that she had seen her taking a thimble, and that the plaintiff replied that she had not any thimble. The witness testified that she then asked plaintiff to go to the office, and that on the way the plaintiff stated that she was awfully sorry for the occurrence. The plaintiff, according to this witness, was taken to an ante room used as a locker room for the employees of the store, and that she then asked the plaintiff where the thimbles were, and that the plaintiff replied, " Well, you will find them all right," and that the witness then asked the plaintiff what she had in her bag, and that the plaintiff replied that she had some drugs and asked if she could pay for them

and said she was awfully sorry and really more than sorry for the occurrence; that at the suggestion of the witness the plaintiff then visited the desk of the investigator's bureau where a Mr. Rohan, employed by the defendant as an investigator, was seated, and that the plaintiff then told Rohan that she was very sorry and asked permission to pay for the articles which she had in her bag, and at the suggestion of Rohan the plaintiff signified her willingness to sign papers which were there presented to her; that the plaintiff then stated: " I have taken the drugs from your department, but I have not taken the thimbles." The witness then testified that the investigator Rohan then read to plaintiff twice the release which had been prepared and a written confession, and that the plaintiff signed both. The drug articles were then upon the table in the presence of the plaintiff, Rohan and the witness, and were then from there taken and put back into stock. The thimbles were not found upon the plaintiff. The plaintiff was then told to leave the store and not return again. The release which the plaintiff admits she signed was in the usual form of a general release, and the confession statement which the plaintiff also signed, both instruments being witnessed by Mr. Rohan and Miss Hager, confessed that on December 18, 1918, between the hours of four and five o'clock P. M., the plaintiff had taken from the defendant the following articles, one sal hepatica; one ex-lax; one hair pins; one lapactic; one aspirin; all of the value of one dollar and sixty cents; and that she had taken them with intent to appropriate the same to her own use without intending to pay Gimbel Brothers therefor or compensate them in any way; that she knew Gimbel Brothers to be the owner of the merchandise taken by her; that she willfully and unlawfully stole said merchandise. Miss Hager further testified that the following morning as she was removing her rubbers in the locker room she saw something in a box which was kept there for merchandise packages and upon investigation found three silver thimbles; that the plaintiff was seated near said box and for a time was alone prior to being ushered into the presence of the investigator on the evening previous.

All of the drugs found in the plaintiff's bag were returned

at once to the defendant's stock from which they had been taken.

The defendant also swore as a witness one Rose Mackenberg, who testified that on the occasion in question she had called at the defendant's store and was waiting for the closing hour when she and Miss Hager, her friend, were going to the theatre; that she roomed with Miss Hager, and that she was standing a few feet distant from the thimble counter and saw plaintiff take two or more of the thimbles in the palm of her hand and descend to the basement of the defendant's store. Miss Mackenberg testified that she had previously called Miss Hager's attention to the peculiar actions of the plaintiff and that out of curiosity she followed the plaintiff to the basement and saw her place the thimbles in a handkerchief or some white cloth and conceal the same under her dress.

The defendant also produced as a witness its investigator, James A. Rohan, who substantially corroborated Miss Hager in the transaction with reference to plaintiff's confession of having stolen the drug articles, and the execution of the release and written confession, testifying that the latter instruments were both read over by him to the plaintiff, and that she in turn read and voluntarily signed them, fully understanding and appreciating their contents.

Howard Browne, who was chief investigator for the defendant, and who was also present at the time of the alleged confession of the plaintiff, corroborated the testimony of Miss Hager and Rohan with reference thereto, testifying that Rohan read the two written documents to the plaintiff, and that the plaintiff herself read them and voluntarily signed the same.

This completed the testimony in the case, aside from certain questions on rebuttal which were asked of and answered by the plaintiff.

From a careful examination of the evidence in the case, I am of the opinion that the verdict of the jury was clearly against the weight of the evidence, and that the plaintiff did not establish a cause of action against the defendant by a fair preponderance of the evidence. It is impossible to read the testimony without being convinced that the witnesses for the defendant related the transaction with reference to the

taking of the thimbles and as to the confession of the plaintiff of the theft of the drug articles with substantial truthfulness. With the exception of the witness Browne, none of the defendant's witnesses was in the defendant's employ at the time of the trial. The witness Mackenberg was apparently entirely disinterested at all times and was a mere spectator of the theft of the thimbles by the plaintiff. I think that the verdict should be set aside and a new trial directed upon the ground that the verdict was against the weight of evidence.

I am also of the opinion that substantial error occurred during the progress of the trial by the exclusion of the testimony offered on the part of the defendant that the several drug articles found in the plaintiff's bag and which she testified she had purchased at Macy's all bore the stamp and tag of the defendant. The plaintiff objected to such testimony upon the ground that the articles themselves were the best evidence. It seems to me that the best evidence rule relates entirely to documentary evidence, and that it was competent for the defendant's witnesses to testify that the articles which they found upon the plaintiff all bore the trade mark or tag of the defendant. Moreover, the testimony conclusively shows that these drug articles, upon the plaintiff's execution of the written confession of having stolen the same, were at once returned to the defendant's stock and, therefore, could not be produced upon the trial, and for this reason secondary evidence should have been permitted as to any memoranda or tags attached to said articles, showing merely that said articles came from defendant's stock.

The verdict itself was for damages greatly in excess of anything justified by the evidence given in behalf of the plaintiff. One of her doctors merely testified that plaintiff's physical condition was not bad, " except that she is of a nervous type. Her nervous condition is poor." The only other medical testimony as to plaintiff's physical condition was furnished by Dr. Farrell, who testified that he had treated plaintiff since May, 1919, professionally about ten times, and that her ailment was " neurasthenia," meaning " nervous breakdown." These bare morsels of medical testimony were, of course, supplemented by the testimony of the plaintiff as to her nervous condition, but all of the testimony upon this

subject would be entirely insufficient to support the verdict which was rendered. However, as we reverse the judgment and grant a new trial upon the ground that the verdict is contrary to the weight of the evidence and for error upon the trial, it is unnecessary to consider the question as to the amount of plaintiff's recovery.

The judgment and order appealed from should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.