COURTNEY M. MABEE et al., Plaintiffs, *v.* WHITE PLAINS PUBLISHING COMPANY, INC., Defendant.

Supreme Court, Westchester County, April 27, 1943.

*Stephen R. J. Roach* for plaintiffs.

*Frances K. Marlatt* and *Elisha Hanson* for defendant.

HINKLEY, J. This action was tried at a regular term of the court held in White Plains, Westchester County, New York, a jury having been waived.

Plaintiffs sue as individuals under the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*), claiming compensation for overtime beyond the regular workweek. There were originally three additional plaintiffs who for various reasons were unable to be present and their claims were not litigated. Although joined as plaintiffs no one individual had any financial interest in the recovery of any other. The court of its own motion severed the action. The causes of action of the three plaintiffs who had not appeared personally were united in one action and the trial thereof stayed. (Soldiers' and Sailors' Civil Relief Act, § 201 [U. S. Code, tit. 50, Appendix, § 521]; Military Law of New York State, § 304; Civ. Prac. Act, § 96.) Trial of the causes of action of the above-entitled six plaintiffs was had.

Prior to the trial the defendant had moved before Mr. Justice WITSCHIEF to dismiss the complaint. The questions raised upon that motion were decided in accordance with the statute and authoritative precedents. The court at this time reaffirms the decision of Mr. Justice WITSCHIEF (179 Misc. 832) to the full extent thereof. Sustained by credible evidence adduced upon the trial the following objections raised upon the motion to dismiss and upon the trial are overruled. Daily newspapers such as that published by defendant are subject to the Fair Labor Standards Act of 1938, and the provisions of the Act are not violative of article I, section 8, of the United States Constitution, nor the First or Fifth Amendments thereof. (*Fleming* v. *Lowell Sun Co.*, 36 F. Supp. 320, revd. on another ground *sub nom. Lowell Sun Co.* v. *Fleming*, 120 F. 2d 213, which was affirmed *sub nom. Holland* v. *Lowell Sun Co.*, 315 U. S. 784; *A. H. Belo Corp.* v. *Street*, 36 F. Supp. 907, affd. 121 F. 2d 207, affd. *sub nom. Walling* v. *Belo Corp.*, 316 U. S.

624; *Walling* v. *Sun Pub. Co.*, 47 F. Supp. 180.) The Associated Press is engaged in interstate commerce. (*Associated Press* v. *N. L. R. B.*, 301 U. S. 103.) The Fair Labor Standards Act of 1938 is not unreasonable or arbitrary because it exempts certain weekly newspapers from its application. (*Fleming* v. *Lowell Sun Co., supra; Walling* v. *Sun Pub. Co., supra.*) The decision of the motion to dismiss the complaint specifically left to the trial court the determination of the question as to whether the activities of the plaintiffs related to interstate commerce. Evidence upon the trial established that each of the plaintiffs was employed in producing and working on such goods in a process and occupation necessary to the production thereof. [Fair Labor Standards Act of 1938, § 3, subd. (j), U. S. Code, tit. 29, § 203, subd. (j); Interpretative Bulletin No. 1, par. 5, of the Wage and Hour Division of U. S. Department of Labor, dated Nov. 1938.]

The plaintiffs were all employees of the defendant acting in various capacities in the publication at White Plains, New York, of a daily newspaper known as "The Daily Reporter." In the composing room of defendant's plant time clocks were installed and accurate records kept of the time spent in service by the employees of that department. However, there were no time clocks installed or time records kept in the editorial department where plaintiffs were employed. The plaintiffs themselves kept no records of their regular hours nor of their overtime. Section 7 of the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 207) prohibited employment over forty-four hours per week for the first year after the passage of the Act; over forty-two hours the second year; and over forty hours the third year and thereafter, *unless* the employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he was employed. The plaintiffs were all employed when the Act took effect on October 24, 1938, and were still so employed when the newspaper ceased publication on February 28, 1941. We are therefore concerned with the period between those two dates. Authority is vested in this court to hear, try and determine the issues herein. [Fair Labor Standards Act of 1938, § 16, subd. (b); U. S. Code, tit. 29, § 216, subd. (b).]

Current records being unavailable, plaintiffs produced in court and introduced in evidence the newspaper files for the period last mentioned. Prior to the trial each plaintiff had examined these files and selected the articles therein contained

upon which each claimed to have been employed by defendant in addition to the regular workweek hours. Each plaintiff testified in each instance to the minimum length of overtime required and actually spent by him in procuring the data and composing the selected articles. For convenience at the trial this testimony was presented in the form of typewritten schedules, the correctness of which was respectively attested to by the sworn testimony of the various plaintiffs. No direct evidence was offered by defendant to prove that the articles were not written by the respective plaintiffs as claimed, or that the respective plaintiffs did not work overtime, or that the minimum hours as claimed were not required or spent. The defendant objected to this testimony, claiming that it was not definite or accurate, or of sufficient probative value to be admissible. Defendant cannot be heard to complain for its own admitted neglect or refusal to obey the statute and make, keep and preserve accurate records of the wages and hours of plaintiffs. [Fair Labor Standards Act of 1938, § 11, subd. (c); § 15, subd. (a), par. (5); U. S. Code, tit. 29, § 211, subd. (c); § 215, subd. (a), par. (5).] From the testimony upon the trial it is apparent that the method adopted by plaintiffs is the only manner by which they could attempt to establish their overtime. The period of claimed overtime covers many months and no one could, without refreshment of recollection, swear to the exact details of his work. There is no superior evidence available or procurable. We are not concerned with the rule of best and secondary evidence, as that relates entirely to documentary evidence. (*Carroll* v. *Gimbel Bros.*, 195 App. Div. 444 at p. 451; 32 C. J. S., Evidence, § 782.) " ' All evidence,' said Lord Mansfield in *Blatch* v. *Archer* (1 Cowper, 63, 65), ' is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted.' " (*Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522 at p. 526; *Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63 at p. 69.) The courts have gone so far as to say that evidence of facts, which are necessarily indefinite and which cannot be proved with even an approach to accuracy, is admissible. Provided that no better evidence is available, more cannot be required. (*Houghkirk* v. *President, etc., D. & H. C. Co.*, 92 N. Y. 219 at p. 225.) The duty devolves upon the court to give or to deny credence to the testimony of the plaintiffs. True, the major portion of news items, editorials, and special articles is gathered and written during the daylight working hours, but major and minor events which go to make up news are not in

the habit of punching a time clock or showing due respect for the statutory minimum hours of a workweek. News may break at any hour of the day or night, flare up, and in twenty-four hours be cold and uninteresting. The news-gathering staff of a wide-awake daily newspaper must be prepared not only to report scheduled events occurring during the regular working hours, but also to stand by and work overtime in order that there may be a coherent, uninterrupted record of each day's happenings. Meetings, social functions, entertainments, wartime communiques, and fireside chats frequently occur in the evening. Weighed in the scales of common experience there is nothing unreasonable in the claim of overtime by one engaged in gathering, assembling or creating the varied items which go to make up a daily newspaper. In the absence of substantial or detailed contradictory evidence the court must and does find by a fair preponderance of the believable evidence that the plaintiffs did perform services for the defendant beyond the prescribed hours of designated workweeks and that the minimum overtime hours as claimed were actually spent in the course of their employment.

Defendant contends that the Fair Labor Standards Act of 1938 does not apply to any of these plaintiffs for the reason that every one of them was employed in a *bona fide* executive, administrative or professional capacity and all come within the exceptions set forth under section 13, subd. (a), of the Act [U. S. Code, tit. 29, § 213, subd. (a)].

That section reads as follows: "Sec. 213. (a) The provisions of sections 206 and 207 of this title [prescribing the minimum and maximum wages and hours] shall not apply with respect to (1) any employee employed in a *bona fide* executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator)." The regulations of the Administrator (Code of Federal Regulations, tit. 29, ch. V, part 541, eff. Oct. 24, 1940) which define and delimit those terms are too extensive to be quoted herein. So far as they concern an employee employed in a *bona fide* executive capacity, they are separately stated. Each separate definition and delimitation consists of a series of qualifications under alphabetical and numerical headings. Therein the Administrator has been meticulous in the use of the conjunctive " and " and the disjunctive " or." For an employee, as defined and delimited by the Administrator, is employed in a *bona fide* executive capacity only when he qualifies under A, B, C, D, E, and F,

of section 541.1; in a *bona fide* administrative capacity only when he qualifies under A, and also under any one of the subdivisions of B numbered (1), (2), (3), or (4) of section 541.2 as amended; and in a *bona fide* professional capacity only when he qualifies under subdivisions A-1, 2, 3, 4 and either 5 (a) or 5 (b) and B of section 541.3. The limitations of this opinion prohibit a detailed description of the duties of each plaintiff in relation to such regulations of the Administrator. Suffice it to say that no one of the plaintiffs performed services which bring him within the definition or delimitation of executive, administrative or professional as defined and delimited by the regulations of the Administrator. This finding is consistent with the Interpretative Bulletins of the Wage and Hour Division of the United States Department of Labor. These bulletins, while not issued as regulations under statutory authority, do carry weight and persuasiveness as an expression of the view of those experienced in the administration of the Act. (*United States* v. *American Trucking Associations,* 310 U. S. 534 at p. 549.)

The interesting question arises as to how plaintiffs are entitled to compute their overtime. Section 7, subdivision (a), of the Fair Labor Standards Act of 1938 [U. S. Code, tit. 29, § 207, subd. (a)] provides as follows: " No employer shall * * * employ any of his employees who is engaged in commerce or in the production of goods for commerce — (1) for a workweek longer than forty-four hours during the first year from the effective date of this section, (2) for a workweek longer than forty-two hours during the second year from such date, or (3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The law is clearly established that in the absence of contract or definite arrangement the " regular rate at which he (an employee) is employed " is determined by dividing his weekly salary by the actual hours worked *each* week. Each week that he worked beyond the statutory prohibition would entitle him to extra compensation for each hour of overtime each week computed at one and one-half times such regular rate at which he was employed. (*Overnight Motor Transportation Co., Inc.* v. *Missel,* 316 U. S. 572, approving this method as used in *Warren-Bradshaw Drilling Co.* v. *Hall,* 124 F. 2d 42, and other cases in lower court and as employed by the Administrator [Interpretative Bulletin No. 4, par. 9, of Wage and Hour Divi-

sion] ; *Walling* v. *Belo Corp.*, 316 U. S. 624.) In the latter case at page 632 the court points out that the " regular " rate as so fixed is certainly " irregular " in a mathematical sense, and that it is difficult to say that it is " regular " in the sense that either employer or employee knows what it is or can plan on the basis of it.

Under this system of computation, the longer an employer compels or asks an employee to work, the lower the rate of pay at which he is employed. A simpler and fairer method, particularly as to the employee, would be to declare that his weekly salary was compensation only for the hours that he legally could work under the statute. Nowhere is this method suggested save as dictum in *Fleming* v. *Belo Corp.* (121 F. 2d 207 at p. 211).

In the instant case, however, there was a definite standard set up prior to the passage of the Fair Labor Standards Act of 1938. One Walter V. Hogan, vice-president and treasurer of the company, and editor of the newspaper, swore that in 1933 when the NRA came into existence the entire newspaper was reorganized on a forty-hour-a-week basis; the workweek of each employee was definitely forty hours; the basic week of each employee, including the news man, was forty hours a week, and that basic forty-hour week was in effect at all times since 1933 (Stenographer's Minutes, page 503). Here we have a definite, uncontradicted agreement of employment that each employee's salary shall be for forty hours' employment each week. In other words, each employee was required to commence work at a definite hour each day and work until a specified hour, which in the weekly aggregate would amount to forty hours. True, under that arrangement he might at times work less than forty hours or more than forty hours a week. But by definite hours of employment each day a week, the regular rate of pay could be mathematically measured as though he were paid by the hour. As an illustration, if he received a weekly salary of forty dollars, his pay amounted to one dollar an hour. The regular rate at which he was employed is clearly arrived at by dividing his weekly salary by the forty hours, upon which basis the entire newspaper had been organized for five years. Thus we have in this instance a method by which we can determine the regular rate at which each plaintiff was employed, and by this method the regular rate of each employee must be computed. The employee's overtime commenced after he had worked beyond the statutory forty-four, forty-two, or forty hours prescribed by statute in the respective years.

Judgment may be entered in favor of plaintiffs in accordance with this opinion for unpaid overtime computed as herein indicated at the rate of one and one-half times the regular rate at which each plaintiff was respectively employed, and an additional equal amount as liquidated damages and attorneys' fees [Fair Labor Standards Act of 1938, § 16, subd. (b); U. S. Code, tit. 29, § 216, subd. (b)].