McGivern, J.
The defendants have moved for an order pursuant to rule 106 of the Rules of Civil Practice; dismissing the second alleged cause of action for insufficiency on its face.
In substance, it is pleaded that the plaintiff is engaged in the retail business of selling storm windows and doors; that by “ honesty and fair dealing toward its customers ” it has built up a substantial business; that it obtains its customers by advertising in newspapers, and on television and radio; that essential to its business operations, which are conducted upon an installment basis, is adequate financing by banks, lending institutions and the Federal Housing Authority; that the defendants (Better Business Bureau of New York, Inc., and three individuals, its president, vice-president and manager) hold themselves out to the public “ as striving impartially to preserve good business-consumer relations, and to investigate and give publicity to and aid in actions against vendors offering *57 commodities of doubtful value by fraudulent and deceptive methods ” and that they “ invite the consuming public, the advertising media, the banks and lending institutions, the Federal Housing Authority, and others upon whom the plaintiff’s business is dependent, to believe that the defendants are experts, impartial and peculiarly qualified for the task of making-true and accurate investigations into such complaints and reports thereon ’ ’; that the ‘‘ defendant Bureau has. as its members some of the leading business institutions in the City and State of New York”; that “ among the members of the defendant Bureau are business men and businesses in competition with the plaintiff ’ ’; that the ‘‘ prestige ’’ of the Bureau and its members and directors is such that ‘ ‘ the public at large, lending institutions, advertising media, the Federal Housing Authority, and others ”, accept “ charges ” made by the Bureau as “ true and accurate”; that the defendants received false complaints from “less than a fraction of one per cent” of plaintiff’s customers; that they “ intentionally or with reckless indifference * * * publicised said false and meritless complaints to the public, and said banks and lending institutions, the said advertising media, the Federal Housing Authority, and others, without any fair, adequate * * * evaluation.” (Emphasis supplied.)
It is further alleged that the ‘‘ defendants, with knowledge of the falsity of the said complaints or with reckless indifference and without knowledge and without good faith * * * and on the basis thereof * * * did * * * induce the said banks, advertising media, and the public to cease and desist from doing business with the plaintiff ’’; that ‘‘ the public ’’ was “induced to refrain from doing business with the plaintiff ’’; that the ‘‘ advertising media ’’ were ‘‘ induced to * * * reject and refuse to publish or otherwise disseminate the advertising campaigns of the plaintiff ’’; and that ‘‘ banks and lending institutions were * * * induced by the defendants to refrain from financing the plaintiff’s installment sales.” The plaintiff claims to have suffered damage to its ‘‘ reputation, prestige and good will,” a diminution of the “value ” of its “business and * * * name”, and an impairment of its “ vested property rights.”
The foregoing represents a fair summary of the second count of this complaint. Within the first alleged cause of action for libel against which the defendants do not move, is incorporated, in full, the maleficent publication of which the plaintiff complains, a “ monthly memo ” issued and disseminated by the defendant. Better Business Bureau of New York, Inc.
*58 The crux of the second count is the allegation that “ defendants * * * publicized said false and meritless complaints.” Such a plea of publication is characteristic of an action for defamation and brings the case well within the compass of the familiar rule that the publication complained of must be set forth in haec verba or as nearly so as is reasonably possible. The pleading at issue is not enlarged by the added averment that the ‘‘ defendants * * * did in fact wilfully and intentionally or with reckless indifference induce the said banks, advertising media, and the public, to cease and desist from doing business with the plaintiff.” Bead in context, this says only that the defamatory publication or publications referred to, but not incorporated in this count of the complaint, were the means or instruments of inducement employed by the defendants. It is not fairly inferable from this pleading that other methods of inducement were resorted to. If such was the case, the necessary ultimate facts to support the conclusory allegations of this complaint are lacking, and should have been pleaded. Thus the second count, construed with uttermost liberality, nevertheless stems from the traditional tort of libel.
If the plaintiff does in fact rely upon a course of conduct engaged in by the defendants, beyond mere publication of a libel, and such as would constitute a “ prima facie tort ”, the overt acts which make the ease should be marshalled in averments of ultimate fact. If all that happened here was the publication of defamatory matter a cause of action for defamation is an adequate and the only available remedy.
In addition, the pleading before us is unacceptable in its present form because, like the pleading under consideration in Brandt v. Winchell (283 App. Div. 338, 342) “ it contains much more than a plain and concise statement of the material facts as required under the general rules of pleading (see Civ. Prac. Act, § 241).” It may be said here, as in Brandt (supra, pp. 342-343): “ If the plaintiff only intends to rely on the ‘ prima facie tort ’ theory in this case, he should confine his pleading to allegations of fact and averments of special damage limited to this tort and eliminate any statement of wrongdoing and injury appropriate to one or more of the traditional torts. If, on the other hand, the plaintiff intends to add a claim for damages based on any of the traditional torts, each such tort should be pleaded as a separate cause of action and the resultant damage or injury separately stated.”
Thus, if the plaintiff intends to rely on the publication and distribution by defendants of a libel, it has no need of an action on the case for a “ prima facie tort ”. In the assessment of *59 damages for a libel, due consideration of the means and methods of dissemination is relevant. Similarly relevant is the position and prestige of those who are responsible for publication. However, the allegedly singular and powerful influence of these defendants does not make a “ prima facie tort ” out of what would otherwise be a conventional libel, though it is a factor affecting the measure of the plaintiff’s damages. Also, the alleged self-interest and wrongful motivations of the defendant may, in a libel suit, have a bearing upon punitive damages. But none of these factors, alone or in combination, will transform an action sounding in libel into one for a “ prima facie tort ”, The latter cause of action is reserved for “ operative misconduct ” (Brandt, supra, p. 343) not classifiable as a traditional tort. As said in Advance Music Corp. v. American Tobacco Co. (296 N. Y. 79, 83) where the defendants’ “ operative misconduct ’ ’ consisted of their failure to play on a radio program of “ hit tunes ”, songs which had been published by plaintiff: “ Thus in sum and substance the second cause of action constitutes a statement to this effect: The defendants are wantonly causing damage to the plaintiff by a system of conduct on their part which warrants an- inference that they intend harm of that type. ’ ’ With reference to the case in hand, the second count of the complaint fails to show, by appropriate statements of ultimate fact, “ a system of conduct ” from which may be inferred a “ prima facie tort ” beyond libel and for which a traditional toft action does not afford adequate redress.
Another necessary element of a complaint in an action on the case, based upon a “ prima facie tort ”, is a statement of reasonably identifiable losses which were suffered by the plaintiff. The gravamen of such an action is that the plaintiff has suffered specific measurable loss, by conduct of the defendant, which though fraught with ill intent, is not recognizable as a traditional tort. It is therefore of integral importance, in an action for a “prima facie tort”, that the nature of the loss of damage be definitely stated with a greater degree of particularity than found in paragraph 18 herein. And for its failure to aver damages in specific terms the complaint again does not fulfill its office as a plaintiff’s pleading.
Accordingly, the motion of the defendants under rule 106 of the Rules of Civil Practice is granted and the second alleged cause of action is dismissed with leave to the plaintiff to plead anew within twenty days after service upon its attorney of an order herein.