Biter S. KAJTAZI, an infant under the age of eighteen, by Olyvia Ann Kajtazi, his guardian ad litem, and Olyvia Ann Kajtazi, Individually, Plaintiffs,

v.

Fabian S. KAJTAZI, Joseph Kajtazi, and Adolph Kajtazi, Defendants.

No. 78 C 279.

United States District Court, E. D. New York.

Aug. 29, 1978.

Fuchsberg & Fuchsberg, New York City, for plaintiffs; Henry H. Foster, Jr., New York City, of counsel.

Memorandum of Decision and Order

MISHLER, Chief Judge.

Plaintiffs charge defendants with false imprisonment, abduction, malicious and intentional infliction of mental suffering, prima facie tort, and conspiracy in abducting the infant plaintiff to Yugoslavia. The court held an inquest on the default of defendants in answering.[1] Defendants are relatives who shared a home in Whitestone, Queens, New York, and operated a family jewelry business in Manhattan. Fabian S. Kajtazi is the husband of plaintiff Olyvia Ann Kajtazi and the father of infant plaintiff Biter S. Kajtazi. Defendant Joseph Kajtazi is Fabian's stepfather; and defendant Adolph, also known as "Eddie" Kajtazi is the older brother of Fabian. The family home also included "Gina" or Mrs. Joseph Kajtazi, her daughter Elizabeth Kajtazi, who is about nineteen years of age, and twin sons about fourteen years old. Until the latter part of June 1977, plaintiffs Olyvia and Biter lived in this household which was operated "old country" style, i. e., having meals in common, with Joseph performing the alleged role of patriarch in the family.

On June 28, 1977, Olyvia separated from her husband, defendant Fabian, and left the home in Whitestone, Queens, New York, with Biter. On July 4, 1977, with Biter, she moved into her parents' home in Newport Beach, Orange County, California. On September 2, 1977, Olyvia commenced an action for divorce in the Superior Court, Orange County, California. Fabian was served with process and notice of hearing on September 20 of her application for an award of custody of Biter. Fabian defaulted in answering and appearing. On September 26, 1977, the court issued an order awarding custody to her during the pendency of the action.

Soon after the award of custody to Olyvia, Fabian, Joseph and Adolph told Olyvia and her mother, Mrs. Richard Stewart, by telephone, that they would take custody of Biter in defiance of the court order.

On November 2 and 3, 1977, defendant Fabian was in Newport Beach, California, and met with Olyvia, her parents, and their minister, the Reverend McQuoid, in an attempt to work out possible terms of visitation with Biter. The parties arrived at a verbal understanding. On November 4, 1977, while Olyvia was speaking on the telephone with her California attorney, inquiring when the visitation agreement would be ready for signature, Fabian abducted Biter and brought him to the Kajtazi home in Whitestone, Queens, New York. At the time of the abduction the child required surgery to correct a neurological condition.

On November 14, 1977, Olyvia petitioned the Supreme Court of the State of New York, Queens County, for a writ of habeas corpus addressed to the three defendants to produce Biter in court on November 17, 1977. Fabian and Joseph were duly served on November 14, 1977, and Adolph was served in court. Fabian did not appear. Joseph and Adolph told the court that they did not know the whereabouts of Fabian and Biter. The court adjourned the hearing until November 21, 1977, to give defendants the opportunity to retain counsel.

On November 21, 1977, Joseph and Adolph appeared with counsel. Adolph admitted under oath that he had lied on November 17, when he said that he did not know the whereabouts of Fabian and Biter. He stated that Fabian and Biter had been in New York City at the time of the hearing and that on November 19, 1977, Fabian had flown with Biter to Yugoslavia.[2]

Plaintiff Olyvia then sought civil and criminal contempt proceedings against de-

1. Notice of inquest was served on defendants. Defendants defaulted in appearing.

2. The court adjourned the hearing but issued a warrant of attachment against Fabian. The warrant has not been executed because the defendant Fabian has remained in Yugoslavia.

On November 29, 1977, Fabian telephoned Olyvia, in New York, from Rejica, Yugoslavia, and told her she would never see Biter again unless she joined him in Yugoslavia and reconciled their differences. On December 23, 1977, Olyvia returned to California.

fendants Joseph and Adolph in the Supreme Court of the State of New York, Queens County, on February 24, 1978, alleging obstruction of justice in the habeas corpus proceeding without success. At the conclusion of the proceeding Adolph approached plaintiff's counsel, Henry H. Foster, Jr., and stated, "Neither Fabian or Biter will ever return to the United States. I just want you to know that." (Foster Affid. para. 4).

On February 15, 1978, this action was commenced to recover damages for false imprisonment of the infant Biter and for damages suffered by Olyvia because of the abduction and the intentional infliction of mental suffering.

*Discussion*

Though the initial wrong was committed in California, the restraint against plaintiff's will continued in New York. The choice of law is that of New York.

I. *Abduction and False Imprisonment*

The first cause of action alleges the false imprisonment of the plaintiff Biter and the resulting damage to him having been deprived of the care and companionship of his mother.

■ False imprisonment is an actionable wrong which involves the intentional interference with the person of another. It is a personal tort, in the nature of a trespass against the person, and is defined by statute as a personal injury.[3] False imprisonment consists in the unlawful detention of the person of another, for any length of time, whereby he is deprived of his personal liberty. The constituent elements of a cause of action for false imprisonment are that the defendant intended to confine plaintiff, that plaintiff was conscious of such restraint, that plaintiff did not consent to confinement, and that the confinement was not otherwise privileged. *Parvi v. Kingston*, 41 N.Y.2d 553, 555, 394 N.Y.S.2d 161, 163, 362 N.E.2d 960, 962 (1977); *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 313 *cert. denied, Schanbarger v. Kellogg*, 423 U.S.

929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). Regarding the second element, *i. e.*, awareness of confinement, it has been held in New York that where a person by incompetency or infancy has no such will as enables him to exercise intelligent and legal volition as to his custody, the action may be predicated upon his restraint or removal against the will of the party having his legal custody. *Barker v. Washburn*, 200 N.Y. 280, 284, 93 N.E. 958 (1911). Plaintiff must establish such constituent elements by a fair preponderance of the credible evidence in order to recover for false imprisonment. *Wiltse v. State*, 51 A.D.2d 865, 866, 380 N.Y.S.2d 175, 176 (1976); *Carrol v. Gimbel Bros.*, 195 A.D. 444, 450, 186 N.Y.S. 737, 742 (1921).

■ The unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort. A parent not entitled to custody has no privilege to interfere with the legal custody of the child. *Abdul-Rahman Omar Adra v. Clift*, 195 F.Supp. 857, 862 (D.C.Md.1961). It is apparent to the court by a fair preponderance of the credible evidence that on November 3, 1977, defendant Fabian did unlawfully take, with the intent to keep, the infant plaintiff from his mother in California who was awarded legal custody. The false imprisonment and unlawful detention continued and became even more apparent when on November 19, 1977, defendant Fabian took the infant from New York and flew to Yugoslavia where he and the child have remained.

■ As a general rule, any imprisonment which is not justifiable is a false imprisonment, and subjects those responsible to an action in tort for damages. *Vernes v. Phillips*, 266 N.Y. 298, 300, 194 N.E. 762 (1935); *Grago v. Vassello*, 173 Misc. 736, 739, 19 N.Y.S.2d 34, 37 (1940). Accordingly, all those who by direct act or indirect procurement, personally participate in, or proximately cause, the false imprisonment or unlawful detention are liable therefor. *Burns v. Erben*, 40 N.Y. 463, 466 (1879); *Kaye v. Shane*, 204 Misc. 82, 118 N.Y.S.2d

---

**3.** General Construction Law § 37–a.

592, 593 (1953); *Egleston v. Scheibel*, 113 A.D. 798, 802, 99 N.Y.S. 969, 971 (1906). The evidence before this court is clear. Defendant Fabian abducted and imprisoned the infant plaintiff. Joseph and Adolph stated their intentions to abduct Biter; Biter was brought to the Kajtazi home in Whitestone under the authoritative control of Joseph and Adolph. They knew that Biter was held there against Olyvia's will but represented that they did not know his whereabouts. From this the court infers that Joseph and Adolph participated in the unlawful detention. Joseph and Adolph are jointly liable with Fabian for the damages proximately caused by their active participation in the imprisonment. *Goldberg v. Fleischer's Confidence Food Stores, Inc.*, Sup., 102 N.Y.S.2d 176, 179 (1950); *Nastasi v. State*, 194 Misc. 449, 86 N.Y.S.2d 635, *rev'd on other grounds*, 275 App.Div. 524, 90 N.Y.S.2d 377, *aff'd*, 300 N.Y. 473, 88 N.E.2d 658 (1949). Plaintiff Biter is entitled to recover such damages as arise from and are limited to the period of unlawful imprisonment. *Vitterio v. St. Regis Paper Co.*, 202 App.Div. 775, 194 N.Y.S. 519 (1922). Substantial compensatory damages may be based upon the period of unlawful detention itself. *Williams v. State*, 5 A.D.2d 936, 938, 172 N.Y.S.2d 206, 208 (1958); *Cicurel v. Mollet*, 1 A.D.2d 239, 149 N.Y.S.2d 397, *aff'd*, 1 N.Y.2d 797, 153 N.Y.S.2d 60, 135 N.E.2d 594 (1956). In addition, one falsely imprisoned is entitled to damages for the false imprisonment itself. *Talcott v. National Exhibition Co.*, 144 App.Div. 337, 338, 128 N.Y.S. 1059, 1060 (1911); *Bass v. State*, 196 Misc. 177, 92 N.Y.S.2d 42 (Ct. of Claims 1949).

 Plaintiff Biter seeks punitive damages for the outrageous conduct of the defendants. Punitive damages are applicable to actions for false imprisonment and can be awarded only where malice exists. *Sanders v. Rolnick*, 188 Misc. 627, 67 N.Y. S.2d 652, *aff'd*, 272 App.Div. 803, 71 N.Y. S.2d 896 (1947). Punitive damages may be awarded by way of punishment to the offender and as a warning to others, and can only be awarded against those who have participated in the offense. *Zarcone v. Per-*

*ry*, 572 F.2d 52 (2d Cir. 1978). *Grinnell v. Weston*, 95 App.Div. 454, 456, 88 N.Y.S. 781, 783 (1904). It is apparent from the evidence before this court that the defendant Fabian intentionally and maliciously disregarded the rights of plaintiffs in abducting and imprisoning the infant plaintiff Biter.

The second cause of action is that brought by plaintiff Olyvia for the abduction of Biter depriving plaintiff of the services, association and companionship of her son thereby causing her to expend substantial sums for travel, living and litigation expenses.

 A parent who has the right to the custody, control and services of a minor child may maintain an action for damages against anyone who unlawfully takes or withholds such child. *Abdul-Rahman Omar Adra v. Clift, supra, McGrady v. Rosenbaum*, 62 Misc.2d 182, 187, 308 N.Y.S.2d 181, 186 (1970). The right of action may be based not only on the loss of services but also on the parent's right to the care, custody and companionship of the child. *Hinton v. Hinton*, 141 U.S.App.D.C. 57, 59, 436 F.2d 211, 213, *aff'd*, 160 U.S.App.D.C. 403, 492 F.2d 669 (D.C.Cir.1974). The parent may recover although the child renders no services to him. *McEntee v. New York Foundling Hospital*, 21 Misc.2d 903, 905, 194 N.Y. S.2d 269, 271 (1959); *Pickle v. Page*, 252 N.Y. 474, 476, 169 N.E. 650 (1930); *Lawyer v. Fritcher*, 130 N.Y. 239, 341, 29 N.E. 267 (1891). The parent may recover damages for loss of services of the child, for the parent's wounded feelings, and for the expenses incurred in attempting to recover the child. In addition, the parent is entitled to recover punitive damages provided the defendant was actuated by malice. *Lawyer v. Fritcher, supra; Pickle v. Page, supra; McEntee v. New York Foundling Hospital, supra.*

The plaintiff Biter is entitled to recover from the defendants Fabian, Joseph, and Adolph (1) the sum of $20 a day for each day he has been falsely imprisoned from November 4, 1977, to date; (2) the sum of $5,000 for the false imprisonment itself;

and (3) the sum of $50,000 in punitive damages for the intentional and malicious act of falsely imprisoning the plaintiff. Plaintiff seeks $5,000 alleging deprivation of necessary medical treatment and surgery for his neurological condition. No evidence supports this claim for medical services and it is denied. Plaintiff Biter also seeks $5,000 for being deprived of his American birthright. Plaintiff has not been deprived of his American birthright. He is still a United States citizen. This claimed item of damage is also denied.

The plaintiff Olyvia is entitled to recover from the defendants Fabian, Joseph and Adolph the sum of $50 a day from November 4, 1977 to date for: (1) the loss of services of the infant child and for the wounded feelings incurred; (2) the sum of $500 representing the fair and reasonable amount of personal living expenses incurred in attempting to recover the child;[4] (3) the sum of $5,000 for legal expenses incurred in the attempt to secure the return of her infant son; and (4) the sum of $100,000 in punitive damages for the intentional and malicious act of abducting the infant.

## II. *Malicious and Intentional Infliction of Mental Suffering*

The third cause of action alleged is for malicious and intentional infliction of mental suffering. Recovery is sought for the anxiety, grief and wrong occasioned to the plaintiff Olyvia. Plaintiff claims that under New York tort law the conduct alleged constitutes a distinct tort.

Under the rule of decisional law prevailing in New York mental suffering unaccompanied by physical injury or impact is a recoverable item of damages in an action against the person whose wrongful act was the proximate cause thereof. *Battalla v. State,* 10 N.Y.2d 237, 240, 219 N.Y. S.2d 34, 36, 176 N.E.2d 729, 730 (1961). In *Battalla,* the New York State Court of Appeals held that a complaint alleging that claimant was caused to suffer severe emotional and neurological disturbances, stated a cause of action; even though there was no impact or physical injury. *Id.* In *Halio v. Lurie,* 15 A.D.2d 62, 64, 222 N.Y.S.2d 759, 761 (1961) the court stated affirmatively that intentional infliction of serious mental distress without physical impact can constitute an independent tort which is actionable per se. Where a person's conduct is so extraordinarily vindictive (even though there is no physical contact), it may be regarded as so extreme and outrageous as to give rise to a cause of action for emotional distress. *Flamm v. Van Nierop,* 56 Misc.2d 1059, 1061, 291 N.Y.S.2d 189, 191 (1968). Prosser, Law of Torts, § 12 at 56 (4th ed. 1971), states: "[T]here is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."[5]

It is difficult to conceive of intentional conduct more calculated to cause severe emotional distress than the outrageous conduct of the defendant Fabian in surreptitiously abducting the infant, from his mother who had legal custody, and falsely imprisoning him in Yugoslavia. This outrageous conduct constitutes the distinct tort of intentional infliction of mental suffering under New York decisional law. The plaintiff Olyvia is entitled to recover from the defendants Fabian, Joseph and Adolph the sum of $50 a day from November 4, 1977, to

---

4. The court takes into consideration the amount of time spent in New York during the period of the habeas corpus proceeding (November 17, 1977—November 21, 1977) and round trip air fare from California to New York in connection with such proceeding.

5. Restatement of Torts § 46, Comment g (1948 Supp.):

In short, the rule stated in this section imposes liability for intentionally causing severe emotional distress in those situations in which the actor's conduct has gone beyond all reasonable bounds of decency. The prohibited conduct is conduct which in the eyes of decent men and women, in a civilized community is considered outrageous and intolerable. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim "outrageous!"

date of judgment, for the intentional infliction of mental suffering occasioned by the plaintiff due to the felonious conduct of the defendant.

### III. *Prima Facie Tort*

The fourth cause of action alleged is for prima facie tort. New York recognizes a distinct cause of action for prima facie tort but the doctrine has crystallized into a narrowly restricted specific remedy, involving otherwise lawful conduct not giving rise to an action for some other tort. The New York courts have taken the view that conduct actionable under one of the traditional tort categories cannot be made the subject of an action for prima facie tort. *Susskind v. Ipco Hospital Supply Corp.*, 49 A.D.2d 915, 917, 373 N.Y.S.2d 627, 629 (1975); *Nationwide Carpets, Inc. v. Lenett Publications, Inc.*, 31 A.D.2d 911, 912, 298 N.Y.S.2d 95, 96 (1969); *Best Window Co. v. Better Business Bureau*, 2 Misc.2d 55, 58, 146 N.Y.S.2d 382, 385 (1955). Plaintiffs allege other distinct and sound tort causes of action. This action is duplicative and is dismissed.

### IV. *Conspiracy*

The fifth cause of action alleged is for damages occasioned by the conspiracy of the defendants.

A civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). Unlike a criminal conspiracy, where the conspiracy itself forms the gist of the crime, in a civil conspiracy, it is the overt acts producing damage to the plaintiff that give rise to liability. The charge of conspiracy is merely the string ". . . whereby the plaintiff seeks to tie together those who, acting in concert, may be held liable for any overt act . . . ." *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir.), *cert. denied*, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956).

New York cases hold there is no substantive tort of civil conspiracy in New York *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 311 (1975), and that a civil conspiracy to commit an actionable wrong is not a cause of action. *See ABKCO Industries, Inc. v. Lennon*, 52 A.D.2d 435, 437, 384 N.Y.S.2d 781, 783 (1976); *Health Delivery Systems Inc. v. Scheinman*, 42 A.D.2d 566, 567, 344 N.Y.S.2d 190, 191 (1973); *Egan Real Estate, Inc. v. McGraw*, 40 A.D.2d 299, 301, 339 N.Y.S.2d 870, 872, 244 N.Y.S.2d 378, 380 (1963).

Assuming *arguendo* New York State recognized the substantive tort of civil conspiracy, because of the critical function of the overt act, the allegations must be supported by more than vague and conclusory statements. The complaint must contain specific facts which demonstrate what the defendant did to execute the conspiracy; that such acts fit within the framework of the conspiracy; and that such acts have inflicted injury upon the plaintiff. *Hoffman v. Halden*, 268 F.2d 280 (9th Cir. 1959); *Martin Hodas, East Coast Cinematics v. Lindsay*, 431 F.Supp. 637, 644 (S.D.N.Y.1977). Defendants Joseph and Adolph, together with defendant Fabian, in combination, agreement, or understanding among all or between any of them plotted, planned, or conspired to carry out the alleged chain of events which led to the abduction and false imprisonment of the infant Biter.

The Clerk of the Court is directed to enter judgment in favor of: (1) plaintiff Biter and against defendants Fabian, S. Kajtazi, Joseph Kajtazi and Adolph Kajtazi in the amount of: (a) $5,980 for the duration of the false imprisonment from November 4, 1977 to date; (b) $5,000 for the false imprisonment itself, and (c) the sum of $50,000 in punitive damages for the intentional and malicious act of falsely imprisoning the plaintiff; (2) plaintiff Olyvia and against defendants Fabian S. Kajtazi, Joseph Kajtazi and Adolph Kajtazi in the amount of: (a) $14,950 for the loss of services of the infant child and for the wounded feelings incurred from November 4, 1977 to date; (b) $500.00 representing the fair and reasonable amount of personal living ex-

penses incurred in attempting to recover the child; (c) $5,000 for legal expenses incurred in the attempt to secure the return of her infant son; and (d) $100,000 in punitive damages for the intentional and malicious act of abducting the infant. Plaintiffs may apply for additional damages upon proof of damages incurred subsequent to entry of judgment, and it is

SO ORDERED.